## D. G. COURTNAY v. M. F. KNOX.

[FILED MAY 5, 1891.]

1. **Notaries Public:** POWERS. Notaries public, under section 7 of chapter 61, Comp. Stats., are not authorized to punish by fine or imprisonment persons guilty of misdemeanor, or misbehavior, during the taking of depositions.

2. ———: ———. In the taking of depositions notaries public are not exercising judicial functions, and do not constitute a law court. Their powers are solely derived from the statute.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*D. G. Courtnay,* and *C. E. Magoon,* for plaintiff in error:

A notary public has no other authority than that conferred by secs. 6 and 7, ch. 61, Comp. Stats. He has no

power to fine. (Rapalje, Contempts, p. 10; *Kreiger's Case,*
7 Mo. App., 367; *Burtt v. Pyle,* 89 Ind., 398.)

*Lamb, Ricketts & Wilson, contra:*

A notary, while taking depositions, is exercising judicial
functions and is a court. (*Dogge v. State,* 21 Neb., 272.)
Every judicial tribunal has inherent power to punish con-
tempt committed in its presence. (*Rottman v. Bartling,* 37
N. W. Rep., 668; *State v. Copp,* 15 N. H., 212; *Robb v.
McDonald,* 29 Ia., 330; *In re Cooper,* 32 Vt., 253; *U. S.
v. Hudson,* 7 Cranch [U. S.], 32; *State v. Applegate,* 2 Mc-
Cord [S. Car.], 110; *Hollingsworth v. Duane,* Wall. [U. S.
C. C.], 57; *Clark v. People,* Breese [Ill.], 340; *Brown v.
People,* 19 Ill., 613; *Hill v. Crandall,* 52 Id., 70; *People
v. Wilson,* 64 Id., 195; *Storey v. People,* 79 Id., 45.) As
plaintiff was not in custody, his payment of the fine was
voluntary and cannot be recovered back. (*Sieber v. Wei-
den,* 17 Neb., 582; *Mundy v. Whittemore,* 15 Id., 647.)

Cobb, Ch. J.

This cause is on error from the district court of the
county of Lancaster.

The plaintiff below alleged that the defendant was in-
debted to him in the sum of $10 with interest from Feb-
ruary 15, 1887, for money had and received at that date,
for which he asks judgment.

The defendant answered, as a plea to the jurisdiction of
the court, that on February 15, 1887, he was a duly com-
missioned and qualified notary public within and for Cus-
ter county in this state; that on said date depositions were
being taken before him, in his official capacity, at Broken
Bow, in Custer county, in an action pending in the district
court of Lancaster county, wherein C. J. Elliott et al. were
plaintiffs and D. G. Courtnay et al. were defendants, pur-
suant to notice theretofore served, and pursuant to the ap-

pearance of the parties by their attorneys, and while thus taking the evidence the plaintiff, Courtnay, repeatedly indulged in vulgar and profane language in the presence of this defendant while officially engaged as aforesaid, and in the presence of a lady witness, then present to give testimony.

Whereupon defendant imposed upon the plaintiff a fine of $10 for contempt, and required him then and there to pay it, which he paid under protest, and thereafter demanded its repayment. And defendant then and there inserted in the body of the deposition the following:

"And now at 11 o'clock P. M., this 15th day of February, 1887, while proceeding in taking the testimony, D. G. Courtnay uttered oaths and words in my presence as to justify me in fining him for contempt, and thereupon I assess him therein a fine of $10 for contempt. It is hereby considered and adjudged by me that the state of Nebraska recover from D. G. Courtnay the sum of $10, together with costs herein, taxed at ——, and that he stand committed until the fine and costs are paid, and then said D. G. Courtnay comes and pays the sum of $10, his fine assessed against him."

Defendant alleges that, sitting officially as a notary public, he had the power to take and maintain the necessary order for the proper taking of testimony, and to that end had the power to impose fine for contempt on the plaintiff if he refused to maintain order or to conduct himself in a respectful manner.

Defendant further alleges that the money was paid by the plaintiff voluntarily, without being deprived of his liberty or in the custody of an officer, and solely upon the demand of defendant, with the declaration that if the fine was not paid he would be given in charge to the sheriff. To the answer the plaintiff demurred, which was overruled, and the plaintiff electing to stand on his demurrer, judgment was for the defendant for $29.55 costs; to

which the plaintiff excepted and assigned the following errors:

1. The court erred in overruling the demurrer.

2. The judgment is contrary to law.

It will not be seriously contended that a notary public in this state has any other or greater authority than that conferred by secs. 6 and 7 of chap. 61, p. 597, of Comp. Stats. of 1889.

Sec. 6 relates to his powers, duties, and certificates, the administering of oaths in all cases, taking depositions, acknowledgments, and proofs of the execution of deeds, mortgages, powers of attorney, and other instruments in writing to be used or recorded in this state, to demand acceptance or payment of any foreign, inland, or domestic bill of exchange, promissory note, or other obligation in writing, and to protest the same for non-acceptance or non-payment, and give notice to indorsers, makers, drawers, or acceptors of such demand or non-acceptance, or non-payment; "and to exercise and perform such other powers and duties, as by the law of nations, and according to commercial usage, or by the laws of the United States, or of any other state or territory of the United States, or of any other government or country, may be exercised and performed by notaries public, and over his signature and official seal certify the performance of such duties so exercised and performed under the provisions of this act, which certificate shall be received in all courts of this state, as presumptive evidence of the facts therein certified to; and on due proof of the loss of such original certificate, the record thereof, so kept by such notary public as is by this act prescribed, shall be received by all courts in this state as presumptive evidence of the facts therein recorded; *Provided,* That any person interested in the subject-matter of such certificate or record of such certificate, may, by other evidence, contradict the matters and things set forth in such certificates, or in the record thereof."

In the 7th sec., relating to depositions and contempts he "is empowered to issue summonses and command the presence before him of witnesses, and to punish witnesses for neglect or refusal to obey such summons, or for refusal to testify when present, by commitment to the jail of the county for contempt; and all sheriffs and constables in his state are hereby required to serve and return all process issued by notaries public in the taking of testimony of witnesses by commission or deposition." Limiting this authority, sec. 1 of art. 6 of the constitution of this state provides that "The judicial power of this state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and such other courts inferior to the district courts as may be created by law for cities and incorporated towns."

A notary public can have, therefore, no judicial power, and has only that ministerial authority conferred on his office by the statutes quoted. His authority to punish for contempts is strictly limited to the commitment to the county jail of absent witnesses subpœnaed to testify, or of those present refusing to answer; and to the needful exercise of this authority, all sheriffs and constables are required to serve his process. But there is no authority conferred to impose a fine for any contempt or for a misdemeanor. If it be insisted, as in the defendant's answer, that the power to punish by fine or imprisonment for contempts, *in facie curiæ*, is inherent in the authority of taking and certifying juridical evidence, it is answered that this common law power has hitherto been confined to courts of record, or to magistrates having precisely defined judicial powers.

A careful writer of the New York bar, on Civil and Criminal Contempts, as late as 1884, laid it down that a "notary public has no power, either by common law or by statute, when taking depositions, to punish the witness as for contempt, for contumacious refusal to answer proper

questions; and where the witness is committed to jail for such refusal, an action for false imprisonment will lie against the notary and the person committed will be dis-discharged on *habeas corpus.*" (Rapalje, sec. 7.) But this rule has been changed by our statute, as shown.

In the case of *Dogge v. State,* 21 Neb., 272, the questions involved and presented to the court were:

1. Whether the adverse party to a suit can, in this state, be compelled to testify.

2. Has a notary public, in this state, power to commit, for contempt, a witness who refuses to give his deposition?

In stating the case, in the opinion, the court says, " These questions alone are presented, and they alone were argued at the bar of the court, and they alone will be considered." The first question was held in the affirmative, under section 328 of the Civil Code, " that it was the intention of the legislature, in the enactment of the chapter on evidence, to remove every barrier to the discovery of truth, where the parties to the action have equal opportunity to testify. And where necessary, either party may call the other to testify as to facts exclusively within his knowledge, provided the questions are not privileged."

The second question was held in the affirmative, and properly so, under the statute conferring that authority, before cited. There was no question of the juridical powers or judicial functions of a notary public before the court to be considered. The statute conferred authority to commit to the jail in discharge of the ministerial duty of taking testimony and certifying the depositions of witnesses required by law to give evidence. "As to the powers and duties of notaries, the statutes of each state are supreme, and where they have enlarged these powers or abridged them in any respect, they control absolutely within the limits of the state enacting the statute." (Giaque on Notaries Public, sec. 27, ch. 1.) The author adds that " The general rule seems to be that the power of notaries to com-

mit witnesses for contempt is wholly statutory, and it being a power in derogation of the rights of the citizen, will be strictly construed," and cites examples.

In *Mallinkrodt's Case, ex parte,* 20 Mo., 493, it appeared that the petitioner was committed to jail by a notary public of St. Louis county for contempt in not producing certain books and papers in obedience to a *subpœna duces tecum,* issued by the notary, to give testimony in an action pending in the circuit court of St. Louis. The *mittimus* set forth that the petitioner admitted having the books and papers in his possession when the subpœna was served, and had since delivered them to one of the defendants to avoid producing them at the taking of his deposition. The notary committed him to jail, there to remain until he should produce them, their materiality being made to appear by the affidavit of the agent of the plaintiff. The court said that the act of February 13, 1847, empowered notaries to take depositions under the act entitled "Depositions," approved January 17, 1845. The 15th section of that act authorized the officer to compel the attendance of witnesses in the same manner and under like penalties as any court of record of this state. The 8th section provides that a witness who shall refuse to give evidence, which may lawfully be required, may be committed to prison by the person authorized to take the deposition. The court held that the power of notaries in taking depositions is strictly statutory." They can do nothing not expressly authorized, and under the circumstances which authorize it. There is no power given to commit a witness for refusing to produce books. Powers in derogation of the rights of the citizen are to be strictly construed. The prisoner is discharged." All the judges concurred.

The distinction here made, between the taking of the testimony of the witness and requiring him to produce books and papers relating to his business, was more distinctly drawn and declared by the supreme court of the

United States in Kilbourn's case against the sergeant at arms, the speaker, and a select committee of the house of representatives of the 44th congress.    Kilbourn, for refusing to answer certain questions, and produce his books and papers relating to his partnership in a real estate pool, in the District of Columbia, was, by order of the house of representatives, imprisoned in the common jail forty-five days, and until the adjournment of congress.    He brought an action against the officers who executed the order, and the committee which brought him before the house, and recovered against them $15,000 damages.    It was taken on error to the supreme court of the United States, which held, that although the house could punish its own members, could decide contested elections, and determine the qualifications of members, could exercise the sole power of impeachment of government officers, and might, where the examination of witnesses was necessary to the accomplishment of these ends, fine and imprison a contumacious witness, there was not to be found in the constitution of the United States any general power vested in either house of congress to punish for contempt, and Justice Miller said : " Whether the power of punishment in either house by fine or imprisonment goes beyond this or not, we are sure that no person can be punished for contumacy as a witness before either house, unless his testimony is required in a matter into which that house has jurisdiction to inquire, and we feel equally sure that neither of these bodies possess the general power of making inquiry into the private affairs of the citizen." (103 U. S., 190.)   Thus limiting the power of congress to punish for contempt to that specially granted in the constitution, as the power of the notary is limited to the authority of the statute.

In *Kreiger's Case*, 7 Mo. App., 367, it was held that "in a proceeding, under the *habeas corpus* act, to bring up a prisoner charged with contempt in refusing to answer interrogatories before a notary public taking depositions

there is no presumption of jurisdiction in favor of the notary, and no adjudication as to the jurisdictional fact which the court regards, and it is the duty of the court to examine whether the commitment is within the meaning and spirit, as well as the letter of the law.

"The law does not confer upon a notary public the arbitrary power to compel a witness to answer all questions, however incompetent, irrelevant, and inadmissible, which may be asked, and a refusal to answer such is not necessarily a contempt. To entitle a notary to commit for contempt, he must exercise his functions not only formally, but substantially in the manner and under the circumstances contemplated by law. For a flagrant abuse of process the notary is liable, and the attorneys engaged in promoting the proceeding are punishable by disbarment or otherwise."

In Floyd county, Indiana, Pyle brought his action against Burtt, a notary public, for false imprisonment. In his answer the defendant set up justification on the ground of his being lawfully employed in taking the plaintiff's deposition as evidence in the circuit court of Clark county; that the plaintiff appeared as a witness and was sworn, but refused to testify and answer proper questions; that for such contempt the defendant committed him to jail for three hours only. The plaintiff demurred, and the circuit court sustained the demurrer. On appeal to the supreme court it was held that "the common law did not authorize a notary public to take depositions; such authority is conferred only by statute. As to the manner of taking depositions the powers of notaries are prescribed and limited by statute. That of this state authorizes them to take depositions and to compel the attendance of witnesses, but they have no power to punish for contempt the refusal of a witness to answer interrogatories. He has no legal right to inflict either fine or imprisonment as penalties for contempt and disobedience of his authority. The answer is insufficient, and the demurrer was properly sustained." (89 Ind., 398.)

These precedents tend to show that a notary's legal duties have heretofore been regarded as limited to the provisions of the statute; that he borrows no judicial power, in the taking of depositions, from the dignity of his employment or the necessities of his case. No authority has been presented—and none has been found—that in taking depositions he exercises judicial functions, and is a court. Nor can it be constituted a police court by opinion.

The answer of defendant admits that he imposed the fine for contempt with the threat of imprisonment, the payment by the plaintiff under protest, and the subsequent demand for restitution. It is not shown by the answer that the money was paid over to the treasurer of the county for the use of the school fund, but that it remains in the defendant's possession. The answer of defendant is not a sufficient defense, but is wholly incompetent; the demurrer of the plaintiff should have been sustained.

The judgment of the district court is therefore reversed, and judgment will be entered in this court for the plaintiff for the amount of the fine with interest from February 15, 1887, and costs of suit.

JUDGMENT ACCORDINGLY.

THE other judges concur.