IN RE E. A. BUTLER ET AL.

FILED APRIL 5, 1906. No. 14,598.

1. **Depositions: NOTARIES: POWERS.** In the taking of depositions notaries public are not exercising judicial functions, and do not constitute a law court. Their powers are derived solely from the statute. *Courtnay v. Knox*, 31 Neb. 652.

2. **Notaries: CONTEMPT: PENALTY.** When a witness fails to attend before a notary public in obedience to a subpœna issued by that officer, he may be punished as for a contempt; but such punishment cannot exceed a fine of $50, and the notary is not authorized by statute to commit the witness to the county jail therefor.

ORIGINAL application for a writ of habeas corpus. *Writ allowed.*

In re Butler.

*H. M. Sullivan* and *Mockett & Mattley,* for petitioners.

*R. A. Moore, contra.*

BARNES, J.

This is an original application for a writ of habeas corpus. The petitioners were arrested on a complaint made before one J. R. Rhodes, a notary public in and for Custer county, Nebraska, charging them with having failed and refused to obey a subpœna issued by said officer in the matter of taking certain depositions. They were found guilty by the notary, and were committed to the common jail of Custer county. To regain their liberty they prosecute this proceeding.

It appears from the return of the respondent that on the 12th day of December, 1904, R. A. Moore and James Ledwich, as plaintiffs, gave the petitioners, as defendants, notice that they would take their depositions, in an action alleged to be pending in the district court for Custer county, at the hour of 10 o'clock A. M., on the 14th day of December, 1904, before one J. R. Rhodes, a notary public, at his office in the village of Ansley, in said county. It also appears that a subpœna corresponding to said notice was issued by the notary and served on the petitioners. It further appears that on the 13th day of December, 1904, a notice to take the depositions of the same persons, in the same case, before the same officer, on the 16th day of December, 1904, was served on one H. M. Sullivan, the attorney for the petitioners; that said fact was communicated to them by their attorney, and for that reason they failed to appear before the notary on the 14th day of December according to the subpœna above mentioned. Afterwards, on the said 14th day of December, and after the time mentioned in the first notice and subpœna had expired, R. A. Moore appeared before the notary and made the following complaint (omitting the title): "State of Nebraska, Custer County, ss.: I, R. A.

Moore, on oath depose and say that I am one of the plaintiffs mentioned in the above suit; that on the 12th day of December, 1904, I caused a notice to be issued and served on the defendants that plaintiff would take the depositions of E. A. Butler, William Mattley and Arthur Barks, before J. R. Rhodes, a notary public of Ansley, Custer county, Nebraska, on the 14th day of December, 1904, at the hour of 10 o'clock A. M., and that said witnesses were personally served with a subpœna signed by said notary; that the return to the notice and subpœna is hereby made a part of this showing; that said witnesses have failed, and wilfully and knowingly refused to appear before said notary and submit to an examination, and affiant asks that the said notary issue an attachment for said witnesses, and that they be arrested, and brought before said notary, and be fined for said contempt; that by disobeying said subpœna said witnesses are in contempt of court, and he asks that they be compelled to appear and submit to an examination, as by law provided." Signed and sworn to by R. A. Moore. After filing the complaint above quoted, the notary issued a warrant for the arrest of the petitioners, which warrant was in the words and figures following: "State of Nebraska, Custer county, ss.: To the Sheriff or any Constable of said County: You are hereby commanded to arrest forthwith E. A. Butler, William Mattley and Arthur Barks, and bring them before me, J. R. Rhodes, a notary public in and for the village of Ansley, county of Custer, and state of Nebraska, to show cause why they should not be punished for contempt for disobeying the order of said notary public in subpœnaing said witnesses to appear before him to take their depositions to be used in a cause pending in the district court for Custer county, Nebraska, wherein R. A. Moore and James Ledwich are plaintiffs and Nettie Barks and Arthur Barks and E. A. Butler & Co. et al. are defendants, on the 14th day of December, 1904, at 10 o'clock A. M., such behavior tending to interrupt the due course of the trial of said cause. Given under my hand and official

seal this 14th day of December, 1904. J. R. Rhodes, Notary Public. (Seal.)"

The petitioners were thereupon arrested, and brought before the notary. The hearing of said contempt proceeding was continued from time to time, until the 19th day of December, 1904, when the cause was tried, and the petitioners were adjudged to be in contempt, and were committed to the common jail of Custer county. The foregoing are the facts established by the petition, the return of the sheriff of Custer county, the respondent herein, together with the testimony taken on the hearing before us.

The petitioners now contend, among other things, that the judgment or order of the notary, and the warrant of commitment thereon, by which they are restrained of their liberty, are void, because the notary was without jurisdiction to make such order of commitment. We think this contention is well founded. The rule is fundamental that in taking depositions notaries public are not exercising judicial functions, and do not constitute a law court. Their powers are solely derived from the statute. *Courtnay v. Knox*, 31 Neb. 652. Keeping in mind this rule, we find from an examination of the statutes that section 356 of the code provides: "Disobedience of a subpœna, or a refusal to be sworn, or to answer as a witness, or to subscribe a deposition, when lawfully ordered, may be punished as a contempt of the court or officer by whom his attendance or testimony is required." It is further provided by section 358 of the code: "The punishment for the contempt mentioned in section 356 shall be as follows: When the witness fails to attend in obedience to the subpœna (except in case of a demand and failure to pay his fees), the court or officer may fine the witness in a sum not exceeding $50. In other cases, the court or officer may fine the witness in a sum not exceeding $50 nor less than $5 or may imprison him in the county jail, there to remain until he shall submit to be sworn, to testify, or give his deposition." It will be observed that the complaint on which the petitioners were arrested and brought

before the notary charged them with failing and refusing to obey the subpœna above mentioned. This is the only charge contained in the complaint, and is the one described in the warrant. It seems clear that for that offense the officer could impose no greater punishment than a fine of $50 and that he had no power or authority to commit the petitioners to the county jail therefor. In *Ex parte Mallinkrodt*, 20 Mo. 493, where the petitioner was committed to jail by a notary public for contempt in not producing certain books and papers in answer to a *subpœna duces tecum*, issued by the notary, to give testimony in an action pending in the circuit court of St. Louis, it was held:

"The power of notaries, in taking depositions, is strictly statutory. They can do nothing not expressly authorized and under the circumstances which authorize it. There is no power given to an officer taking depositions to commit a witness for refusing to produce books."

The only power given the notary by our statutes in case of a refusal of the witness to obey a subpœna is to fine him not to exceed the sum of $50. It follows that the order of the court based on the complaint and warrant set forth in the respondent's return was without authority of law and is void.

It is contended for the respondent that the order of the notary and warrant of commitment show that the petitioners were found guilty of the offense of refusing to testify, and therefore the order was valid. The record itself is a sufficient answer to this contention. It is not shown that the petitioners were directed or ordered to be sworn. It is not shown that they refused to be sworn or give their testimony. The record does not show that a single question of any kind, seeking to elicit their testimony, was propounded to them. In fact the only question before the notary at the time his order of commitment was made was whether or not the petitioners were in contempt for refusing to obey the subpœna. As was said in *Crites v. State*, 74 Neb. 687, a proceeding to punish for con-

tempt is criminal in its nature, and the rules governing criminal proceedings are applicable thereto. It is essential to the validity of contempt proceedings that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support; that the record must show forth the facts constituting the offense. That the record in this case fails to comply with these well known requirements, and is not sufficient to sustain the order of commitment, there can be no question. The petitioners being unlawfully restrained of their liberty must be discharged from custody, and it is so ordered.

JUDGMENT ACCORDINGLY.