## IN RE ELMER C. HAMMOND.
## IN RE BYRON G. BUTTON.

FILED MARCH 5, 1909. NOS. 16,063, 16,064.

1. **Depositions.** Sections 966 and 967 of the code do not apply to the taking of depositions before justices of the peace, but section 356 *et seq.* control in such matters.

2. **Habeas Corpus: CONTEMPT.** Irregularities in proceedings before justices of the peace committing a recusant witness cannot be reviewed upon habeas corpus. It is only when the proceedings are void that this writ can be of any value.

3. **Constitutional Law: CONSTRUCTION.** The language of the constitution is to be interpreted with reference to the established laws, usages and customs of the country at the time of its adoption, and the course of ordinary and long-settled proceedings according to law.

4. **Depositions: JUSTICE OF THE PEACE: AUTHORITY.** Statutes authorizing justices of the peace to take depositions and to punish persons who disobey subpœnas or refuse to answer proper questions are within the provisions of section 18, art. VI of the constitution, providing that justices of the peace shall "have and exercise such jurisdiction as may be provided by law."

5. ———: **CONTEMPT.** A refusal to answer such improper questions as would constitute abuses of process is not a contempt and may not be punished, and a witness is entitled to his privileges and immunities as well when a deposition is taken as when examined in open court.

ORIGINAL application for a writ of habeas corpus. *Writ denied.*

*Flansburg & Williams,* for petitioners.

*Charles A. Robbins, contra.*

LETTON, J.

This is an application for a writ of habeas corpus. The petitioner was detained by virtue of an order of commitment issued by Minor S. Bacon, a justice of the peace in and for Lancaster county, which commanded the keeper of the jail of that county to receive him "and him there safely keep until he shall submit to be sworn and testify and to give his deposition in the case entitled George W. Herr, Plaintiff, v. Button Land Company et al., Defendants, now pending in the district court for Lancaster county, Nebraska."

It appears that a subpœna was served upon the petitioner requiring him to appear and give his deposition in that case on January 19, 1909, before Justice Bacon; that he demanded and was paid his fees for one day's attendance, and that he failed to appear in response to the subpœna, whereupon an attachment was issued by the justice and delivered to a constable, who arrested and brought him before the justice forthwith. He was then requested by the justice to be sworn and testify, but he refused, saying that, acting upon the advice of counsel, he would refuse to be sworn and would refuse to testify in the case. Certain questions were then asked by the attorney for Herr, which the witness refused to answer. By agreement the hearing was adjourned until the next day. Like proceedings were had as to Byron G. Button. On that day an answer was filed, alleging that the taking of the depositions was in bad faith and for the purpose of annoying the defendants in the case and was a mere fishing for testimony; that their testimony was not material nor necessary to the plaintiff's cause of action; that the defendants are residents of Lancaster county, wherein the action is pending; that they have no intention of removing therefrom; that other witnesses were named in the notice to take depositions, but that none of them were examined or sworn; that after the witnesses were arrested and brought before the examining officer, the plaintiff

Herr and his attorney abandoned the complaint, charging disobedience to the subpœna, and undertook while they were under arrest to compel the defendants to be sworn and examined under the notice to take depositions, and that the complaint to which this answer is filed is a different complaint and is for a different offense from that for which these defendants were arrested. It is further alleged that the proceeding is void, and in violation of that provision of the federal constitution which provides that no person in a criminal case shall be compelled to be a witness against himself. The record then shows that the witness "having refused to be sworn, and having refused to testify by deposition upon being requested so to do by the court, and the defendant having filed his showing why he should not be punished for contempt, the court finds the defendant Elmer C. Hammond guilty of contempt of court," and judgment was rendered committing him to the county jail, "there to remain until he shall submit to be sworn and testify and to give his deposition in the case." A warrant of commitment was thereupon issued and the petitioner committed to jail.

A number of questions are discussed in the brief of the petitioner. His first contention is that under sections 966 and 967 of the code a justice of the peace has no power to do more than impose a fine of $5 for refusal to be sworn or to answer questions. We are of the opinion that these sections do not apply to the taking of depositions, but that sections 356 *et seq.* control.

It is next contended that, when a witness is brought before the court by attachment for refusal to obey a subpœna, he can only be tried and punished for that contempt, and that a court has no power to propound questions to him and punish for a refusal to answer the questions. This, however, is the ordinary practice when a trial is in progress, leaving the contempt in refusing to obey the subpoena to be dealt with later, and we see no objections to the practice. The order of procedure is within the court's discretion.

He next contends that the justice of the peace in taking a deposition does not act judicially; that he is a mere ministerial officer, and has no power to adjudge a person guilty of contempt and commit him to jail, and that a law conferring such power violates section 1, art. VI of the constitution of the state. Lastly he urges that a refusal to answer improper and irrelevant questions is not a contempt of court, and that it is an abuse of process to take depositions for the purpose of discovery. Several of the points raised by the petitioner have already been considered by this court, and disposed of adversely to his contentions, in other cases. In *Dogge v. State*, 21 Neb. 272, certain witnesses who had been subpœnaed to appear before a notary public for the purpose of having their depositions taken failed to appear, an attachment was issued, and the witnesses arrested, taken before the notary, and one of them required to be sworn and give testimony, which she refused to do. She was then found guilty of contempt and ordered to be committed to prison until she should consent to testify. It was urged in that case, as in this, that the witness was a resident of Lancaster county capable of being present at the trial, that she had no intention of being absent from the county, that she was an adverse party in the case, and there was no provision of law whereby she could be compelled to testify before the time of the trial. She further contended that the notary public had no power to commit her, for the reason that he had no judicial powers. As to the first point, it was decided that "it was the intention of the legislature, in the enactment of the chapter on evidence, to remove every barrier to discovery of truth, where the parties to the action have equal opportunity to testify. And, where necessary, either party may call the other to testify as to facts exclusively within his knowledge, provided the questions are not privileged." On the second point, it is held that the provisions of section 1, art. VI of the constitution, providing, "The judicial power of the state shall be vested in a supreme court, district courts, county courts, justices of

the peace, police magistrates, and in such other courts inferior to the district courts as may be created by law for cities and incorporated towns," do not limit the exercise of all judicial functions to the courts named; that it was not the intention of the framers of the constitution to prevent the exercise of all judicial functions except ·by these courts; and that since these statutory powers were in existence before the adoption of the constitution they were continued in force by section 4, art. XVI thereof.

In *Courtnay v. Knox*, 31 Neb. 652, it was held that a notary had no power to punish a person, not a witness, for contempt in using flagrant and profane language in the presence of the notary and witnesses then present to give testimony, since no such power was conferred by the statute. The conclusion is reached that the notary's powers are limited to the provisions of the statute, and "that he borrows no judicial power, in the taking of depositions, from the dignity of his employment or the. necessities of his case." *Olmsted ·v. Edson*, 71 Neb. 17, was an action against a county judge to recover damages for false imprisonment. The petition alleged that the plaintiffs were husband and wife, and residents of Webster county; that an action was brought against them in the district court for that county; that a notice to take their depositions in that case at the office of the defendant county judge was served on them, and that a subpœna was issued and served requiring them to appear and give testimony. The plaintiffs appeared before the county judge and made known to him that they were residents of Webster county, that they have no intention of absenting themselves therefrom, either temporarily or permanently; that neither of them are either sick, aged or infirm, so as to interfere with them being present and giving testimony at the trial of the case; that the attempt to take their deposition was not in good faith, but for the purpose of harassing and vexing them; that they were husband and wife, and that they each objected on that ground to either of them being sworn or to testify as witnesses, and that they thereupon refused to

give their depositions; that the county judge entered an order finding them guilty of contempt in refusing to give their depositions and committed them to jail, from which they were afterwards discharged by habeas corpus.. In the opinion it is said: "The proper and orderly thing for them to have done was to have taken the oath as witnesses and if, by the questions propounded, it appeared that the answers would constitute evidence by the one against the other, to have then made the proper objections which, undoubtedly, would have been sustained. * * * Plaintiffs' contention that such jurisdiction was ousted by a showing that none of the grounds enumerated in section 372 of the code for using the depositions on the trial of the case existed at the time it was sought to take them is untenable. That section is not a limitation on the right to take depositions, but on the right to use them on the trial of the case." *Wehrs v. State*, 132 Ind. 157; *In re Abeles*, 12 Kan. 451.

The facts in *In re Butler*, 76 Neb. 267, were that the petitioner had been imprisoned by a notary for failing and refusing to obey a subpœna requiring him to appear before the notary to take his deposition. Under section 358 of the code the officer can impose no greater punishment than a fine of $50 for refusing to obey a subpœna, and the court held that since this is the full power given by the statute in such a case the notary had exceeded his power, that his act was void, and the petitioner was illegally held, and he was set at liberty. It was also said that notaries in such matters are not a court and do not exercise judicial functions, but derive their powers solely from the statute. In *DeCamp v. Archibald*, 50 Ohio St. 618, the same contention was made as in this case with reference to the powers of a notary public in committing a witness to jail for refusing to answer questions. The sections of the revised statute of Ohio, which are mentioned in the opinion, contain identical provisions with those of the Nebraska code. The supreme court of Ohio

44

was of the opinion that the term " 'judicial power' * * * does not necessarily include the power to hear and determine a matter that is not in the nature of a suit or action between parties. Power to hear and determine matters more or less directly affecting public and private rights is conferred upon and exercised by administrative and executive officers. But this has not been held to affect the validity of statutes by which such powers are conferred"—citing *Dogge v. State,* 21 Neb. 272, *In re Abeles,* 12 Kan. 451, *Ex parte McKee,* 18 Mo. 599, and distinguishing the case of *Kilbourn v. Thompson,* 103 U. S. 168, one of the cases relied on by petitioner.

The supreme court of Kansas at first held in *In re Abeles, supra,* that a notary had power to commit for refusal to testify, but in *In re Huron,* 58 Kan. 152, 36 L. R. A. 822, by a divided court it overruled that case and held that the statute purporting to confer such power is invalid. The opinion announcing this conclusion is written by Johnston, J., in opposition to his own views, which are also stated, and which are in line with *Dogge v. State, supra.* In a note to *Farnham v. Colman,* 1 L. R. A. (n. s.) 1135 (19 S. Dak. 342), a number of cases are collated, and it is shown that at common law only courts of record had power to punish for contempt, and that the power of a justice of the peace to punish a witness for contempt for refusing to be sworn and refusing to testify had its origin in a statute of Philip and Mary. The practice has long been followed in this country under authority of statutes. The power has its source in the statute and exists no further than thus granted. This is the point really decided in *In re Kerrigan,* 33 N. J. Law, 344, cited by petitioner, where a recorder was held to have no general power to punish for contempt, not being a court of record, and that magistrates and others empowered to act in a summary way must act within the powers specially conferred. While admitting the persuasiveness of an opinion by a court of the standing of the courts of New York, we believe that under the laws and constitution of this state we

must decline to follow *People v. Leubischer,* 34 App. Div. (N. Y.) 577, if inconsistent with the views expressed here, though as to this we are somewhat doubtful when the whole opinion is examined. The gist of that case seems to be that a commissioner of the court of another state is not an officer empowered to imprison for contempt, and is not an officer connected with the administration of justice in New York state.

If the language of the constitution were to be construed as strictly as petitioner contends, no judicial powers or functions could be exercised by a judge at chambers or by a county judge, except when in session as a court, for "district courts" and "county courts" alone are mentioned in the section which he quotes. But the words of the constitution are to be interpreted with reference to the established laws, usages and customs of the country at the time of its adoption, and the course of ordinary and long-settled proceedings according to law. Whether the special power given by statute to fine or imprison recusant witnesses is the exercise of a judicial function or of judicial power we think really is merely a matter of academic definition. The point to determine is: Does it violate any provision of the fundamental law? It is one of the long-established means or instrumentalities adopted to aid in securing justice, and must have been in the minds of the makers of the constitution as much as the fact that much of the action of a county judge or of a district judge in chambers is of a judicial nature. *DeCamp v. Archibald,* 50 Ohio St. 618. But, in any event, section 18, art. VI of the constitution, provides that justices of the peace "shall have and exercise such jurisdiction as may be provided by law." The power to take depositions and commit for refusal to testify is expressly conferred by statute. We think that, construing the two sections together, there is no constitutional restriction upon the legislative right to enact the statute or upon the officer to exercise the power. The language of this section is as broad as of that giving judges of courts of record

such jurisdiction as may be provided by law. Constitution, art. VI, sec. 23.

The petitioner complains that the taking of the deposition is not in good faith, and that the questions asked him would require the disclosure of his private business. The record does not disclose that this has been attempted, but, even if it were, it might be proper under the issues, of the nature of which we are not informed. If it should be sought to perpetrate a wrong or to abuse the process of the court or officer clearly for an unjustifiable purpose, we think the witness might lawfully refuse to answer, but this question is not presented here, since the petitioner refused to be sworn or to testify at all. While objections to testimony cannot be ruled upon by the officer, yet it cannot be permitted that a witness may be compelled to answer questions seeking to elicit matters which the determination of the issues of the case did not require, or which pertain to his private business or affairs, and a. ? not proper subjects of inquiry in the case. A commitment of a witness for properly protecting himself from an illegal inquisition would not be upheld. But a refusal to be sworn may properly be punished, as may also a refusal to answer proper interrogatories. *Ex parte Jennings*, 60 Ohio St. 319; *Ex parte Schoepf*, 74 Ohio St. 1; *Ex parte Mallinkrodt*, 20 Mo. 493; *Ex parte Krieger*, 7 Mo. App. 367; *Ex parte Abbott*, 7 Okla. 78. In the case *In re Davis*, 38 Kan. 408, and in *In re Cubberly*, 39 Kan. 291, decided while the rule of the *Abeles* case was the law of that state, it is held that an officer has no power to commit a witness for refusal to give a deposition, when it appears that it is not taken in good faith, but merely to harass and annoy the adverse party or to fish out evidence in advance of the trial. In this state a speedy remedy for the abuse of the power granted is conferred by section 359 of the code, which provides that a witness imprisoned by an officer before whom his deposition is being taken may apply to a judge of the supreme court, district court or probate court, who shall have power to discharge him

if it appear that his imprisonment is illegal. This affords a summary method of review by a judicial officer, and by another section of the statute such power may be exercised at chambers. A refusal to answer such questions as would constitute abuse of process is not a contempt and may not be punished, and a witness is entitled to his privileges and immunities as well when a deposition is taken as when examined in open court.

Under the facts shown in the record, the justice had the right to issue the subpoena to compel the petitioner to appear. On his refusal he had a right to issue an attachment and have him brought into his presence at the time and place specified in the notice to take depositions. He then had a right to request him to be sworn, and upon his contumacious refusal so to do the statute expressly gave him the power to imprison him until he would comply with the order of the court.

The petitioner seems to be held under a lawful commitment, and the writ is therefore

DENIED.