STATE OF NEBRASKA V. WILLIAM F. PORTER ET AL.

FILED JUNE 3, 1903.   No. 12,700.

1. **Constitutional Law.**   Chapter 50, laws of 1899, entitled "An act creating a state registry of brands and marks, a state brand and mark committee, providing for brands and marks upon live stock, and repealing chapter fifty-one (51) of the Compiled Statutes of 1897," is in conflict with the constitution and wholly void.

2. ——:  BRAND AND MARK COMMITTEE.  It was not the intention of the legislature by section 2 of chapter 50, aforesaid, to create a new office to be filled by the secretary of state; but the provision in said section, authorizing the governor to appoint three persons to act as members of a brand and mark committee, was an abortive attempt to add to the number of executive state offices created by the constitution.

3. **Legislative Intent.**   The legislature intended that the secretary of state should retain for his services, as a member of the brand and mark committee, twenty per cent. of all the fees received for recording brands and marks.

4. **Money Received Under Color of Office.**   Money received by the secretary of state for recording brands and marks, under the provisions of the act of 1899, was not received by virtue of his office, but under color of his office.

5. **Official Bond:**  SURETIES.  The sureties on official bonds do not undertake to answer for acts done by their principal under color of his office, but only for acts done by virtue of his office.

6. **Fees:**  ESTOPPEL.  The state has no legal title to any part of the fees received by the secretary of state for recording brands and marks under the provisions of the act of 1899; but that officer having, in collecting such fees, assumed to act in an official capacity, the law does not permit him, when called to account by the state, to deny that he so acted.

7. **Demurrer:**  CONCLUSIONS OF LAW.  A general demurrer admits the truth of all material facts well pleaded, but does not admit conclusions of law.

8. **Official Misconduct Not Established.** Official misconduct is not established by showing that trust funds have been used by a public officer for the very purpose the legislature and the owners of the funds intended they should be used.

ERROR to the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. *Reversed in part.*

*Frank N. Prout, Attorney General, Norris Brown* and *William B. Rose,* for the state.

*Benjamin F. Johnson, Paul F. Clark* and *Charles S. Allen, contra.*

SULLIVAN, C. J.

This was an action on the official bond of ex-secretary of state, William F. Porter. The petition charges that the money claimed by the state was received by Porter under the provisions of chapter 50, laws of 1899, since repealed, and that part of it was applied to his own use and the remainder paid out to S. E. Starrett, a clerk in his office, for services rendered in keeping the records of the brand and mark committee. The trial court was of opinion that the facts pleaded did not constitute a cause of action, and rendered judgment on the merits in favor of all the defendants. The case was submitted in this court upon the theory that the act of 1899 was a valid law, but this theory we can not accept. It was not valid; in whatever light it is viewed, it clashed with the constitution; there was not an enforceable provision in it; from the beginning to the end it was absolutely and utterly null. We are aware that a like act was sustained by the supreme court of South Dakota in *State v. Roddle,* 12 S. Dak. 433, on the assumption that it was the intention of the legislature to create a new office to be filled by the secretary of state, but the South Dakota constitution is different from ours. If we were to follow *State v. Roddle,* we would have to affirm the judgment of the district court, not however on the ground that the act was valid, but on the

ground that the money in question was not received under color of the office of secretary of state. By adopting. the theory upon which *State v. Roddle* was decided, we would avoid one constitutional objection to the act, but in doing so would encounter three others, namely: (1) that the legislature has no power to create a new executive state office; (2) that no officer of the executive department is eligible to any other state office during the term for which he was elected; and (3) that the power to fill an office by election or appointment does not in any case belong to the legislature.

While it is entirely certain that the legislature did attempt by the act of 1899 to add to the number of executive state offices created by the constitution, there is, we think, in the act itself clear and unmistakable evidence that the legislative purpose was to impose new duties on the secretary of state and not to create for him a new office. To hold that the intention was to create a new office, would be to hold that the law could not, in any event, be executed if the secretary of state should refuse to qualify. Thus far it has not been found necessary in this state to provide for the filling of remunerative offices by conscription. When it is thought that the services of a particular individual are indispensable to the public, his friends may appeal to his patriotism, but the state can not, under existing laws, coerce him. Acceptance of office by taking the constitutional oath is and in its very nature must be a voluntary act. The fact that there is no provision for a bond to be given by the secretary of state as a member of the brand and mark committee is also evidence against the contention of defendants that the act should be interpreted as creating a new office to be filled by legislative appointment; but, perhaps stronger evidence of the legislative purpose is to be found in the provisions which, in effect, authorize the deputy secretary of state to receive fees and file and record papers. The act of 1899 provided that the secretary of state should receive as compensation for his services twenty per cent.

of the fees received for recording brands and marks. *State v. Roddle, supra.* This provision was clearly unconstitutional (*Moore v. State,* 53 Neb. 831), but it was not an essential part of the act. The provision that vitiated the entire statute was the one authorizing the governor to appoint three members of the brand and mark committee. By section 1, article V of the constitution, it is declared that:

"The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general, and commissioner of public lands and buildings."

And by section 26 of the same article it is further declared:

"No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created."

The act of 1899 assumed to vest the brand and mark committee with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act were valid, be executive state officers. But as there can be no executive state offices other than those mentioned in section 1, article V of the constitution, the legislation we are considering was, of course, abortive and void. *In re Railroad Commissioners,* 15 Neb. 679; *Pacific Express Co. v. Cornell,* 59 Neb. 364; *Nebraska Telephone Co. v. Cornell,* 59 Neb. 737.

Porter having no authority, in any case, to receive fees paid to him for services rendered as secretary of state, and the fees in question having been paid and received for the use and benefit of the brand and mark committee and not for the use or benefit of the state, it is entirely clear under the previous decisions of this court that the defendant sureties are not liable, and that the judgment in their favor is right. *Huffman v. Koppelkom,* 8 Neb. 344; *Ottenstein v. Alpaugh,* 9 Neb. 237; *State v. Holcomb,* 46

Neb. 612; *State v. Moore,* 56 Neb. 82.   The money in question did not come into Porter's hands by virtue of his office, but under color of his office; he had no legal right to receive it as secretary of state and consequently it was not within the terms of his official bond.   Besides the sureties have done nothing to preclude them from assert-ing the truth, and the truth is that the state has no legal title to any part of the fees received under the provisions of the act of 1899.   Those fees were not paid for official services; they were not earned by the performance of any official act.   They were paid and received in accordance with the legislative intent that eighty per cent. of them should go to the members of the brand and mark commit-tee, and that the remainder should be used in defraying expenses.   But, while the state is not entitled to a judg-ment against the sureties, its claim against Porter is on a different footing.   In receiving the money which the state is now seeking to recover, Porter assumed to act in an official capacity; by his conduct he asserted that he was exercising a power derived from the state, and this asser-tion he can not now repudiate.   The admission which his conduct implied is, for the purposes of this case, indis-putable.   Having claimed to act under the authority of the state in collecting the fees paid for recording brands and marks, he can not now, consistently with good faith and righteous conduct, deny that he so acted.   *Blaco v. State,* 58 Neb. 557; *People v. Swineford,* 77 Mich. 573; *People v. Van Ness,* 79 Cal. 84.

If then the fees retained by Porter be considered as having been received for services rendered by him as secre-tary of state, the conclusion is inevitable that he must account for them.   Before leaving this branch of the case, it may be well to notice the suggestion of the attorney general that the validity of chapter 50, laws of 1899, is affirmed by the petition and admitted by the demurrer. It is, to be sure, an elementary rule of pleading that a general demurrer admits the truth of every material fact well pleaded; but the assertion that a domestic statute is

valid is not an allegation of fact, it is a conclusion of law, and in this case an obviously erroneous one.

The claim that the state is entitled to recover the sum of $595.05 paid to S. E. Starrett for keeping the records of the brand and mark committee, is grounded on the fact that Starrett was a clerk in the office of the secretary of state, and was receiving from the state for his services as such clerk a salary of $100 a month. It is undoubtedly true that a person in the public service must discharge all the duties pertaining to his office or employment, for the compensation fixed by law. As a clerk in the office of the secretary of state, Starrett was not entitled to extra compensation for any services which, in contemplation of the legislature, were within the scope of his employment. But, very clearly, it was no part of his duty to keep the records of the brand and mark committee. The legislature not only intended that those records should be kept by whomsoever the secretary of state might employ for that purpose, but it also intended that whoever did the work should receive pay for his services out of the expense fund provided for by section 3 of the act of 1899. If Starrett actually kept the records he earned the money which he received, and is entitled to retain it. Whether, while he was keeping those records, he neglected his other duties and failed to earn the salary provided for by the legislative appropriation, is a question not raised by this record. It may, however, be remarked in passing that there is no presumption that he was an unfaithful servant. The $595.05 having been used for the very purpose the legislature and the persons who paid it in—the persons to whom it really belonged—intended it should be used, it would be a perversion of language to say that it was misappropriated. In *Cornell v. Irvine,* 56 Neb. 657, it was held that a contract between the regents of the university and a commissioner of this court, by the terms of which the latter was to receive compensation from the state for lectures delivered to the law class was valid and enforceable, in spite of the fact that all of such lectures were delivered

during usual business hours and some of them, at least, at a time when presumably court was in session. Unless this decision is wrong, the payment to Starrett was manifestly right. Indeed we are fully persuaded that the payment was not a misappropriation of the money whether the decision is right or wrong. *Shepard v. Easterling,* 61 Neb. 882. The judgment in favor of the sureties is affirmed, but the judgment in favor of Porter is reversed.

REVERSED IN PART.

SEDGWICK, J., concurring.

When money had been paid into the office of the secretary of state for these fees, to whom did it belong? In *Blaco v. State,* 58 Neb. 557, the action was on the bond of the state oil inspector. One defense was that the act providing for the state oil inspector was unconstitutional and void, and it was held that this defense was not available to the sureties on the bond. This must have been upon the theory that the money belonged to the state, because, whatever might be the default of the oil inspector or his sureties, the state could not recover the money from them that did not belong to it. The act being void, the state could not have demanded and enforced the fees for the inspection of oil. And so in this case the act being void, the state could not have demanded the payment of the fees for registering the brands and marks.

It will be noticed from the wording of the statute that all the fees are to be paid, not to Mr. Porter, but into the office of the secretary of state, and, of course, when so paid into the office of the secretary of state would be the property of the state until legally disposed of.

The fact that the statute was invalid, does not affect the ownership of the money when paid to the state. The various parties paid these fees into the office of the secretary of state, to secure rights which they supposed the state was guaranteeing to them in consideration of those fees. The statute being invalid, and no rights in fact be-

17

ing secured by these parties in consideration of this payment, it does not necessarily follow that the money which they had paid to the state for these rights did not thereby become the property of the state. The payments were voluntary on their part. They are presumed to have known, at the time, that the act was invalid, and paid the money supposing and intending that it was a payment to the state. They are not now complaining nor disputing the right of the state to the money so paid. Even if they had valid claims against the state in amounts equal to the payments they had so made, yet the payments made by them were not in the nature of special deposits, but were general payments to the state, and they had no claim upon the identical money paid in. At most, they could only claim that the state was indebted to them in the amounts they had contributed to its fund. There can be no doubt that the state became entitled to the money when paid into the office of the secretary, and the question is, whether it has been legitimately paid out by the secretary of state, or properly accounted for by him. If not, he is liable to the state therefor. There is no doubt of his liability for the twenty per cent. retained by him for his services.

2. Did the secretary of state properly pay the money to Starrett for his services? If this statute were valid, there can be no doubt that it should be construed that it was intended that twenty per cent. when paid in should be the property of the state. The language is, "twenty per cent. of all of such fees so paid into said office * * * shall constitute a fund *out of* which to defray the expenses," etc. It was not intended that the whole of said twenty per cent. should necessarily be paid to defray the expenses, but such part thereof as should be found necessary for that purpose. The words "out of" will admit of no other construction. If a sum of money is paid into the office of the secretary of state and a part of it is paid out for necessary expenses, the remainder will, of course, be the property of the state, and by like reasoning the whole

would be the property of the state until paid out for the necessary expenses.

Starrett was a clerk in the office of the secretary of state. His compensation was fixed by law at $1,200 a year. The statute contemplated that the twenty per cent. should be used so far as necessary to defray the expenses of the secretary of state incident to the discharge of his duty as a member of the committee. Was this payment to Starrett a necessary expenditure? If the act were valid, the answer would clearly be that the expenditure was not necessary. The state furnished the secretary with a clerk and paid him a prescribed salary. If the clerical force so furnished the secretary was sufficient to perform the necessary work of the office, it clearly was unnecessary to pay out this money for clerk hire. The money being the money of the state, and the clerical work of the secretary's office being increased by the additional duties assumed by that office, it can not be said that the expenditure was necessary, unless it became necessary to employ additional clerical help in the office. The additional work was in the office of the secretary of state and it was done by the clerical force attached by law to that office, and for which the law prescribed the salary to be paid. It was not for the secretary to determine that the extra work in his office, occasioned by the recording of the marks and brands, rendered the duties of the clerk so onerous that the salary provided by law was inadequate. The clerk was able to perform the duties, and if the salary was insufficient the remedy was with the legislature.

The secretary did not necessarily incur any additional expenses on account of the discharge of his supposed duties as a member of this committee, and the appropriation of this money for that purpose was unauthorized by the language of the statute. But the statute was invalid. The money, as we have seen, belonged to the state, and there was no authority for paying it to Starrett. The demurrer should have been overruled, and judgment entered against the defendant Porter for the amount claimed.