[Civil No. 3546. Filed June 3, 1935.]

[46 Pac. (2d) 115.]

YUMA COUNTY, a Municipal Corporation, Appellant, v. DONALD B. WISENER, Appellee.

Mr. William H. Westover, for Appellant.

Mr. R. N. Campbell, for Appellee.

LOCKWOOD, C. J.—Yuma county, a municipal corporation, hereinafter called plaintiff, brought suit against Donald B. Wisener, hereinafter called de-. fendant, for an accounting. There were two causes of action set up in the complaint, and defendant demurred specially to each of these on the ground that facts were not stated therein sufficient to constitute a cause of action against defendant. There was also a general demurrer filed to the complaint as a whole. The court, after considering the matter, sustained the demurrers generally, and plaintiff declining to amend, judgment was rendered in favor of defendant. From such judgment, this appeal was taken.

The sole question before us is whether or not either cause of action set forth in the complaint states facts sufficient to make it good as against a general demurrer, and in determining it we must, of course, assume for the purposes of the demurrer that all of the facts stated in the complaint are true.

The first cause of action set up is, in substance, as follows: Defendant, Wisener, was, at all times involved, the clerk of the superior court of Yuma county, and among his duties was that of issuing licenses to marry. The procedure provided by law for obtaining the license is that the parties desirous of marrying shall apply to the clerk for a license and the latter thereupon requires them to subscribe to an oath that they will answer truly in regard to the names and ages of the parties desiring to marry, the

race to which they belong, their place of residence, and their relationship, if any. This oath is filed by the clerk, and if no legal cause appears why the persons should not marry, the clerk is required by law to issue to them a license to marry upon the payment of a statutory fee of $2. It is the practice of the clerk of the superior court of Yuma county to issue these licenses in the following form:

"Marriage License.

"To any regularly licensed or ordained minister of the Gospel, and Judge of a Court of Record, or any Justice of the Peace within this county, you are hereby authorized to solemnize the

"Rites of Matrimony.

"Between —— Age —— years of —— and —— Age —— years of —— and endorse the same on this License and make return thereof to this office according to law.

"In witness whereof I have hereunto set my hand and affixed my official seal this —— day of ——, A. D. 193—.

"————————

"Clerk of the Superior Court of the State of Arizona in and for Yuma County.

"By ——————

"Deputy Clerk."

to which license is attached a blank marriage certificate which reads as follows:

"Marriage Certificate.

"This certifies that on the —— day of —— A. D. 193—, —— and —— were united in marriage at —— according to the laws of the State of Arizona and by authority of the foregoing license by —— in the presence of —— and ——, who have attached their signatures as witnesses to said marriage ceremony.

"In witness whereof the said contracting parties, the said witnesses and the said —— who solemnized

such marriage ceremony have hereunto set their hand this —— day of ——, A. D. 193—.

"_____                    _____
    "Witness                        Contracting Party
"_____
    "Witness                        Contracting Party
                                    "_____

"Officer, Minister or Person Performing Ceremony.

"NOTE—Persons filling out the above certificate must be careful to get the full name of all parties and see that they sign their full name."

It was the custom of defendant, however, when nonresidents of the state of Arizona appeared before him and made application for a license to marry, at the same time and as a part of the same transaction, after he had filled out the marriage license in proper shape, to lay before the applicants another document which reads as follows:

"Marriage Certificate.

"This certifies that on the —— day of ——, A. D. 19—, —— and —— were united in marriage at —— according to the law of the State of Arizona, County of Yuma, and by the authority of a duly issued license by —— in the presence of —— and —— who have attached their signatures as such witnesses to said marriage ceremony.

"In Witness Whereof the said contracting parties, the said witnesses and the said —— who solemnized such marriage have hereunto set their hands this —— day of ——, A. D. 19—.

"_____                    _____
    "Witness                        Contracting Party
"_____                    _____,
    "Witness                        Contracting Party
                                    "_____

          "Person Performing Ceremony
                   "_____

     "Title of Person Performing Ceremony.

and declare to them in substance:

"This certificate," pointing to the marriage license, "is returned to this office to be recorded after you are married and will be mailed to you in from two to three weeks. The price is $2.00. This Special Certificate (pointing to the marriage certificate mentioned above) is for your convenience, you take that along with you. It does not have to be returned to this office. The price is $2.50, making $4.50 all together."

The system above quoted was devised by the defendant for the purpose of causing applicants for marriage licenses to believe that such additional certificate was required by law, and that he was authorized and directed to charge the $2.50 therefor, and many of such applicants, so believing, did pay the $2.50 for such marriage certificate to the defendant, and he in rendering his accounts to the county would account only for the $2 required by law for the marriage license, and would retain for his own personal use the $2.50.

The second cause of action sets up the character of the parties and the duty of the defendant in regard to marriage licenses, as aforesaid, and then alleges that many nonresidents of the state of Arizona applied to him for marriage licenses after office hours, on Sundays, and on holidays, and when he issued licenses at such times to applicants he charged therefor the sum of $7.50, of which he accounted to the county for $2 only, the remaining portion being converted to his own use. The complaint further states that plaintiff is not able to ascertain the exact amount of money collected by the defendant in the manner aforesaid, but alleges it to be many thousand dollars, and asks for an accounting, and that upon its being ascertained how much has been so collected by the defendant in excess of the legal fee authorized by law, and for which he has already accounted to

plaintiff, that the latter have judgment against defendant for such amount.

The gist of the first cause of action is that the defendant, by means of the scheme or system above set forth, makes nonresident applicants for marriage licenses believe that they can only obtain a license to marry by paying a fee of $4.50, when as a matter of law such licenses are required to be issued upon the payment of the fee of $2, and that when by reason of such deceit on the part of defendant parties make the excess payment, he keeps that for his own use, on the ground that it is not money belonging to Yuma county.

The second cause of action, in substance, is that before he will issue a license at any time outside of the regular office hours he compels applicants to pay him $5.50 in addition to the $2 which the law authorizes and directs him to charge for the issuance of a marriage license, which additional sum he retains.

That the conduct set forth in the first cause of action is improper and unethical is obvious to any right-minded person. Any officer who gives a citizen to understand in any manner that the law requires a fee for the performance of a duty in excess of the legal one, and who retains such excess, when paid, for his own use, is certainly guilty of the most reprehensible conduct, which comes perilously near to being a criminal offense, if it is not actually such. Indeed, counsel for defendant in his brief and in his argument before this court did not attempt to defend the conduct of his client, but contended solely that, regardless of what the moral aspects of the situation may be, Yuma county is not entitled to recover the money which the client has collected. This, of course, is the only legal question before us, and we proceed

to consider it. In so doing we shall discuss the two causes of action separately.

It is the position of plaintiff that it is entitled to recover the money so collected by defendant for two reasons: (a) That it is a "fee" within the meaning of our Constitution and statutes, and that under them all fees collected by public officers must be paid to the county or state, as the case may be; and (b) that the money so collected, even though it was not, strictly speaking, a "fee," within the meaning of the Constitution and statute, was nevertheless money obtained by defendant under color of office as a "fee," and that he is therefore estopped in this proceeding from denying that it is such.

So far as the first contention of plaintiff is concerned, we think it cannot be sustained. There is no authority whatever to be found in our law authorizing or permitting the clerk of the superior court to collect from applicants for a marriage license the $2.50 which it is alleged defendant did collect from many nonresidents of Arizona, under the circumstances above set forth. Such being the case, the county cannot recover the money on the theory that it is a legal fee which defendant has collected by authority of law, and which he has not accounted for.

But when it comes to the second contention, the situation is very different. Color of office is defined as follows:

" . . . Acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them. . . . " *State* v. *Fowler,* 88 Md. 607, 42 Atl. 201, 203, 71 Am. St. Rep. 452, 42 L. R. A. 849.

There can be no question that if defendant by word or deed caused applicants for a marriage license to believe that in order to obtain such license the law required that the $2.50 in question be collected by him as clerk of the court, that he was securing such money under color of office, as the words are generally understood, and it is the usual rule that where a public officer obtains money under color of office, which he had no legal right to collect, that he is not permitted in a suit to recover such sums, either from himself or his bondsmen, to contend that the state has no right to recover the money from him because it had not authorized him to collect it from the citizens whom he had deceived in regard to the law. *City of Philipsburg* v. *Degenhart et al.*, 30 Mont. 299, 76 Pac. 694; *State* v. *Porter*, 69 Neb. 203, 95 N. W. 769, 771; *Kern County* v. *Fay et al.*, 131 Cal. 547, 63 Pac. 857; *People* v. *Hamilton*, 103 Cal. 488, 37 Pac. 627; *People* v. *Van Ness et al.*, 79 Cal. 84, 21 Pac. 554, 12 Am. St. Rep. 134.

Counsel for defendant has attempted to distinguish these cases from the one at bar, and indeed none of them, so far as the facts are concerned, are on all-fours, or perhaps even parallel with the present case. No case has been cited to us, nor have we been able to discover any which is precisely in point on the facts, presumably because such an ingenious scheme of augmenting the salary authorized by law has never previously occurred to a public officer, or if it has he has realized its illegality and refrained from putting it into effect. We are of the opinion, however, that the essential principle involved is the same in all of these cases. As was stated in the case of *State* v. *Porter, supra:*

" . . . In receiving the money which the state is now seeking to recover, Porter assumed to act in an

official capacity. By his conduct he asserted that he was exercising a power derived from the state, and this assertion he cannot now repudiate. The admission which his conduct implied is, for the purposes of this case, indisputable. Having claimed to act under the authority of the state in collecting the fees paid for recording brands and marks, he cannot now consistently with good faith and righteous conduct, deny that he so acted. [Citing cases.] If, then, the fees retained by Porter be considered as having been received for services rendered by him as Secretary of State, the conclusion is inevitable that he must account for them."

We are therefore of the opinion that the first cause of action set forth in the complaint does state a cause of action in favor of plaintiff, and the court erred in sustaining the demurrer to it.

The situation in regard to the second cause of action, however, is very different. According to it, defendant refused to perform his official duties at a time when he was not required by the law to perform them, unless he was compensated for his extra time and trouble. There is no allegation that he represented, directly or indirectly, to any of the parties so paying him that he was authorized by law to collect such additional sums, and indeed the only reasonable implication from the complaint on this point is that all of such parties well knew that he could not legally be required to issue the license outside of regular office hours, and that, knowing this fact, they voluntarily paid him for doing something which the law did not require him to do, to wit, to attend his office at unusual and extraordinary times. Under such circumstances, we cannot say that he secured the extra compensation under color of office, and he is therefore not obliged to account to plaintiff therefor.

The judgment of the superior court of Yuma county is reversed and the case remanded with instructions

to overrule the demurrer to the first cause of action, and for such further proceedings as may be advisable under the circumstances.

McALISTER and ROSS, JJ., concur.