**NUECES COUNTY v. CURRINGTON et al.**

No. 10953.

Court of Civil Appeals, of Texas.
San Antonio.

April 30, 1941.

Rehearing Denied May 28, 1941.

Linton S. Savage and Hal F. Rachal, both of Corpus Christi, for appellant.

B. D. Tarlton and Chas. L. Hale, Jr., both of Corpus Christi, for appellees.

On Motion for Rehearing.

NORVELL, Justice.

Nueces County by this action sought a money judgment against Ann Currington, tax assessor and collector of said county.

It is not here necessary to mention other parties named as defendants in the court below. The appeal is from an order of dismissal entered after the trial court had sustained a demurrer to the petition and the county had refused to amend.

Briefly stated the facts pleaded by the county in its petition, as distinguished from the conclusions of law, are as follows:

On or about January 1, 1935, the appellee assumed the duties of tax assessor and collector of Nueces County, and from said date up to and including the year of 1939, served in such capacity having been elected to said office for successive two year terms. During said years, the appellee issued what are commonly known as "Tax Certificates" using the following form:

"Tax Certificate
"State of Texas
"County of Nueces
"I, Ann Currington, Tax Collector, Nueces County and State of Texas, do hereby certify that all the Taxes according to records now on file in my office, have been paid up to and including the year —— on property described as follows: —— with the following exceptions: ——

"Witness my hand and seal of office this the — day of ——, A. D. 193—.
　　　"Ann Currington,
　　　"Tax Collector, Nueces County,
　　　"Corpus Christi, Texas.
"Assessed to ——
"Issued to ——
　　　　　　"By ——
　　　　　　"Deputy"

A charge was made for these certificates which were issued by the appellee, Ann Currington, or her regularly employed deputies, during regular office hours, and the official seal of the tax assessor and collector was placed thereon. The fees or charges made for such certificates were not, however, paid over to Nueces County, but were retained by the appellee. The total principal sum alleged to be due the County was $4,663, being the total of the amounts charged for these tax certificates during the years 1935 to 1939, inclusive.

It is not alleged in the petition that the collection of the charges or fees for these tax certificates was effected by means of expressed or implied representations that such charges were authorized, or the collection thereof made obligatory by the statutes or laws of the State of Texas. The form

of tax certificate used by the appellee contained a space for the insertion of an exception as to any particular year or years for which taxes upon property described in the certificate were delinquent, but the petition does not allege that any of the certificates issued by appellee contained statements showing that there were outstanding and delinquent taxes assessed against properties covered by the certificates.

In determining the question here involved it is necessary to examine the statutory provisions applicable to the office of tax assessor and collector as the State Constitution, Vernon's Ann.St., provides that the "Assessor and Collector of Taxes shall perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes as may be prescribed by the Legislature." Article 8, § 14, adopted at election of Nov. 8, 1932.

The following statutory provisions relating to the duty of a tax assessor and collector in accounting to the county for moneys collected by him are deemed pertinent to the facts disclosed by the petition. During the year 1935, this matter of accountability was covered by the provisions of Article 3891, R.C.S., as amended in 1933, Chapter 220, page 734, § 2, Acts, Reg.Session 43rd Legislature, Vernon's Ann.Civ.St. art. 3891, which in part reads as follows:

"The compensation, limitations and maximums herein fixed shall also apply to all fees and compensation whatsoever collected by said officers in their official capacity, whether accountable as fees of office under the present law [or not], and any law, general or special, to the contrary is hereby expressly repealed. * * *"

In 1935, the Legislature placed district and county officers of counties having a population of 20,000 or more upon a salary basis. Chapter 465, page 1762, Acts 44th Legislature, 2nd Called Session, effective Jan. 1, 1936, Article 3912e, Vernon's Ann. Civ.St. This Article in part reads as follows:

"Section 1. * * * the assessor and collector of taxes shall continue to collect and retain for the benefit of the Officers' Salary Fund or funds hereinafter provided for, all fees and commissions which he is authorized under law to collect; and it shall be his duty to account for and to pay all such monies received by him into the fund or funds created and provided for under the provisions of this Act. * * *

"Sec. 3. In all cases where the Commissioners' Court shall have determined that county officers or precinct officers in such county shall be compensated for their services by the payment of an annual salary, neither the State of Texas nor any county shall be charged with or pay to any of the officers so compensated, any fee or commission for the performance of any or all of the duties of their offices but such officers shall receive said salary in lieu of all other fees, commissions or compensation which they would otherwise be authorized to retain; provided, however, that the assessor and collector of taxes shall continue to collect and retain for the benefit of the Officers' Salary Fund or funds hereinafter provided for all fees and commissions which he is authorized under law to collect; and it shall be his duty to account for and to pay all such monies received by him into the fund created and provided for under the provisions of this Act; * * *."

It is appellant's contention that the charges collected by appellee for the issuance of tax certificates are embraced within the meaning of the term "all fees and compensation whatsoever collected * * * in (an) *official capacity*," as such term is used in Article 3891 as amended in 1933; that appellee was therefore liable to the County for such sums collected during the year 1935, and that appellee was also liable for such sums collected during the years 1936 to 1939, inclusive, under and by virtue of Article 3912e, which specifically provides for a salary "in lieu of all other fees, commissions or compensation which they [county officers] would otherwise be authorized to retain."

Appellee's position is that the charges collected for tax certificates were not received by Mrs. Currington in her official capacity. Appellee also presents an alternative contention as to the sums collected for the years 1936 to 1939, inclusive, i. e., that appellee under a proper construction of Article 3912e was bound to account only for such fees or charges as she was "authorized under law to collect." Obviously, the term "all fees and compensation whatsoever collected by said officers in their official capacity" (which appellant contends is applicable to the fees or charges involved for the years 1936 to 1939, inclusive) is broader in the scope of its application than the phrase "fees and commissions which he is authorized under law to collect." Therefore, a discussion of appellee's alternative

contention is not necessary unless appellant's position be sustained and it be held that the charges made for tax certificates were fees collected in an "official capacity."

▉▉▉ We think it is clear that a fee paid a public official for the performance of a duty enjoined upon him by statute is properly regarded as compensation collected by said officer in an "official capacity." Appellant takes this position and here contends that the duty of issuing tax certificates is placed upon the tax assessor and collector by virtue of Article 7324, Vernon's Ann.Civ.St., which in part reads as follows:

"During the month of July each year, or as soon thereafter as practicable, the collector of taxes in each county of this State shall mail to the tax roll address of each owner of any lands or lots situated in the county a notice showing the amount of taxes delinquent or past due and unpaid against all such lands and lots as shown by the delinquent tax record of the county on file in the office of the tax collector * * *. Such notice shall also contain a brief description of the lands and lots appearing delinquent and the various sums or amounts due against such lands and lots for each year as they appear to be delinquent, according to such records, and it shall also recite that unless the owner of such lots of land described therein shall pay to the tax collector the amount of taxes, interest, penalties and costs set forth in such notice within thirty days from the date of notice, that the county or district attorney will institute suits for the collection of such moneys and for the foreclosure of the constitutional lien against such lands and lots. * * * *The tax collector shall furnish on demand of any person, firm or corporation like statements with reference to any particular lot or tract of land for whatever purpose desired, which shall be in all, instances certified by him with the seal of his office attached.*"

Appellant specially emphasizes that part of the article above italicized in contending that tax certificates of the kind here involved come within the provisions of the article. We can not agree with appellant's contention. The distinguishing feature of the tax certificate is the statement contained therein to the effect that the taxes have been paid. The notice provided for by Article 7324 is one stating that taxes are delinquent, or have not been paid. Certainly, it can not be said that this article makes it the duty of the tax collector to send notices during the month of July to the tax roll address of each owner of lands or lots within the county upon which the taxes have been paid, informing said owner of that fact. This being true, a "like statement" issued on demand of a person, firm or corporation can not refer to lands against which there are no outstanding delinquent taxes.

It seems obvious to us that a statement or notice of the existence of delinquent taxes and the amount thereof serves an entirely different purpose from that served by a statement that there are no delinquent taxes. The first type of notice is in aid of the collection of taxes; the second type, the tax certificate, can have no such purpose, although the information contained therein may be of assistance in connection with the sales of real estate and the fixing of mortgages thereon. The language of the statute prohibiting inquiry on the part of the tax assessor and collector as to the purpose for which a statement of *delinquent taxes* is required can not be construed as making it the mandatory duty of such officer to issue a certificate that there are *no* delinquent taxes.

Appellant refers to no legislative enactment other than the one hereinabove discussed, as providing for the issuance of tax certificates. It has been held that such certificates are not binding upon the state or a political subdivision thereof. City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W. 2d 308, and it is our conclusion that there is no statutory provision making the issuance of "tax certificates" the duty of the tax assessor and collector. Crosby County Cattle Company v. McDermott, Tex.Civ. App., 281 S.W. 293, 294.

▉ In the McDermott case, the Amarillo Court of Civil Appeals quoted with approval the following from United States v. Mosby, 133 U.S. 273, 10 S.Ct. 327, 33 L. Ed. 625:

" * * * Therefore the consul, in examining Chinese emigrants going to the United States on foreign vessels, did not perform a service required by law or by the regulations, or any service specified in any tariff of fees, or any official service. The fees received for such service, being paid voluntarily to the consul by the person to whom it was rendered, became the private property of the consul and not the money of the United States. This view is not varied by the fact *that the person employed*

*the consul to render the service because he was consul, or by the fact that the consul attached his seal as evidence of his official character,* because he was not required by any law or regulation to use either his seal or his title of office officially, nor was any fee prescribed for the service in any tariff of fees." (Italics ours.)

Under this authority, it seems that the fact that appellee used her official title and the seal of her office in connection with the issuance of a tax certificate, does not make such issuance an "official duty" in the absence of a statutory provision so providing. Nor can the allegations of the petition with reference to the use of the official title and seal be construed as charging that appellee caused persons requesting said tax certificates to believe that the issuance thereof was an official act for which a charge authorized by law was made. The petition is insufficient to charge liability against appellee for fees collected under "color of office" in accordance with the holding of Yuma County v. Wisener, 45 Ariz. 475, 46 P.2d 115, 99 A.L.R. 642.

We are further of the opinion that the fact that appellee or her deputies issued the tax certificates in question during office hours does not make her liable to the County for the fees collected. This is not a suit against appellee based upon allegations that employees paid by the County had rendered services to her in a private capacity, for which the county should be reimbursed. It is not alleged that appellee neglected or failed to perform admittedly official duties because of time necessarily expended by her or her deputies in searching records and preparing tax certificates. This is a suit for the recovery of specific amounts charged by appellee for said tax certificates, and consequently the matters immediately hereinabove mentioned are not before us for determination. State v. Porter, 69 Neb. 203, 95 N.W. 769.

We have heretofore discussed the case of Yuma County v. Wisener, 45 Ariz. 475, 46 P.2d 115, 99 A.L.R. 642. We have held that there is no statute making the issuance of tax certificates a duty of the tax assessor and collector. There is no fee provided by statute for such a service. Therefore, neither the Yuma County case nor Tarrant County v. Rogers, 104 Tex. 224, 135 S.W. 110, 136 S.W. 255, is in point here, as these cases involved the liability of a county official to account to the county for

excessive fees charged for the performance of statutory duties, and collected under representations made to the person paying the fee, that the charge actually made was in accordance with applicable provisions of law providing for the payment of fees for the rendition of official duties of office, a matter not raised by the appellant's petition.

After careful consideration we are of the opinion that our order affirming the judgment of the trial court was correct. Appellant's petition failed to state a cause of action. Crosby County Cattle Company v. McDermott, Tex.Civ.App., 281 S.W. 293; United States v. Mosby, 133 U.S. 273, 10 S.Ct. 327, 33 L.Ed. 625; State ex rel. Lancaster County Commissioners v. Holm, 70 Neb. 606, 97 N.W. 821, 64 L.R.A. 131; 46 Corpus Juris 1017; 22 R.C.L. 540.

Our original opinion is withdrawn and this opinion substituted therefor.

Appellant's motion for rehearing is overruled.