JOHN E. MEKOTA, PLAINTIFF, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT ET AL., DEFENDANTS.

19 N. W. 2d 633

FILED JULY 13, 1945. No. 31991.

*John E. Mekota, pro se.*

*Walter R. Johnson, Attorney General, Edwin Vail,* and *Homer L. Kyle,* for defendants.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, and WENKE, JJ., and POLK, District Judge.

YEAGER, J.

This is an original action instituted in this court by the plaintiff as a taxpayer against the State Board of Equalization and Assessment, Dwight Griswold, Governor, Frank Marsh, Secretary of State, Ray Johnson, State Auditor, Carl G. Swanson, State Treasurer, and Robert Armstrong, State Tax Commissioner, as members composing the State Board of Equalization and Assessment, Ray Johnson, as State Auditor, Dwight Griswold, as Governor, and Frank

Marsh, as Secretary of State, under authority of section 25-21,149, R. S. 1943, being a part of the Declaratory Judgments Act, the purpose of which is to test the constitutionality of the passage and adoption of Legislative Bill 132 of the Acts of the 58th regular session of the Nebraska legislature. The bill with the designation, title and enacting clause is the following:

"Legislative Bill 132

"Introduced by C. Petrus Peterson of Lancaster, J E Conklin of Thayer, Arthur Carmody of Hitchcock

"A BILL FOR AN ACT relating to the future development of Nebraska; to create the Department of Industrial Development; to prescribe the general purposes, powers and duties of such department; to provide for the administration of the affairs of such department; to provide for the appointment and qualification of a director of such department, and the appointment and employment of necessary assistants; to establish a committee to advise and assist the department and its director and for the qualification and residence of its members; to provide an appropriation; and to provide for the prescribed quarterly reports.

"Be it enacted by the people of the State of Nebraska,

"Section 1. There is hereby created a department of government to be known as the 'Department of Industrial Development'. The department shall be provided with office space in the State Capitol.

"Sec. 2. The chief officer of the Department of Industrial Development shall be the director thereof, to be known as the Director of Industrial Development. The director shall be appointed by and hold office at the pleasure of the Governor, but his appointment shall be subject to confirmation by the Legislature. The director shall devote full time to the performance of his official duties. He shall, before assuming the duties of his office, take and subscribe the oath required of state officers, and shall execute to the State of Nebraska a bond in the penal sum of ten thousand dollars, with corporate surety to be approved by the Governor, conditioned for the faithful discharge of the duties of his of-

fice. The bond shall be filed in the office of the Secretary of State and the premium thereon shall be paid by the State of Nebraska.

"Sec. 3. The affairs of the Department of Industrial Development shall be administered by its director, who shall appoint and employ, with the consent of the Nebraska Development Committee, such technical, clerical, stenographic and other assistants and make such expenditures, within such appropriation as the Legislature may provide, as may be necessary to carry out the purposes of this act.

"Sec. 4. The general purposes to be accomplished by the Department of Industrial Development are: (1) To collaborate with agricultural and industrial groups in devising ways and means of assisting business concerns in the conversion of war plants, development of new industries, utilization of state resources, readjustment of war-boom towns and cities to a maximum use of their new facilities, and guidance of the migration of stranded war workers; (2) to energize and establish continuing contacts with local or regional planning agencies, planning agencies in the national government, and similar bodies in the fields of commerce and industry, labor and agriculture, for the purpose of exchanging information and assistance, harmonizing proposed plans, policies and programs, and securing proper timing in their execution; (3) to encourage community self-appraisal programs so that the problems peculiar to each community may be recognized and effectively met through planning at either the local or state level; (4) to encourage, guide and assist post-war preparations within the operating departments and agencies of this state and the local governmental subdivisions thereof; (5) to stimulate and assist post-war preparation and research by individual business concerns in respect to such matters as potential new products, production techniques and markets, and the discovery of new or enlarged uses of agricultural products; and (6) to assist in coordinating post-war planning and activities.

"Sec. 5. The Department of Industrial Development shall have the following powers and duties:

"(1) To supervise and direct surveys and report to the Governor, with such recommendations for legislation or other appropriate action as it may deem necessary, in regard to (a) industrial materials and facilities, (b) production and manufacturing facilities, (c) agriculture, food supply and land use, (d) transportation facilities, (e) labor supply, training and relations, human resources and the professions, trades and skills, (f) housing and related facilities, (g) health, hospitals and sanitation facilities, (h) welfare, (i) educational facilities, (j) recreational areas and facilities, (k) finance, and (l) any other type of activity directly or indirectly related to the purposes of this bill insofar as any or all of such matters or subjects pertain or are related to future development;

"(2) To furnish information to agricultural and industrial associations, chambers of commerce, public and private agencies, and individuals in regard to the possibilities of future development in Nebraska;

"(3) To cooperate with similar departments, commissions or councils in the federal government and in other states;

"(4) To adopt, amend and repeal rules, regulations and bylaws governing its procedure and activities;

"(5) To create committees to aid in the discharge of its powers and duties;

"(6) To require and direct the cooperation and assistance of state and local governmental agencies and officials; and

"(7) To do all acts and things, not inconsistent with law, for the further development of Nebraska's agricultural and industrial resources.

"Sec. 6. In order to avoid duplication of services and facilities, the Department of Industrial Development is directed to utilize the services and facilities of the University of Nebraska, the Department of Roads and Irrigation and all other existing officers, offices, departments, commissions,

boards, bureaus, institutions and other agencies of the state and of the political subdivisions thereof. All such officers and agencies shall cooperate with and extend their services and facilities to this department and to the committees created by it upon request.

"Sec. 7. To advise and assist the Department of Industrial Development in carrying out the provisions of this act, there is hereby created the 'Nebraska Development Committee', which shall consist of nine members to be appointed by the Governor and to serve at his pleasure. At least two of the members thereof shall be residents of each of the present congressional districts and at least one of the members from each of such districts shall be a farmer who is actually residing upon and deriving his livelihood from a farm. The committee shall select a chairman and vice chairman and the director shall serve as its secretary. Appointment of members shall be made without reference to their political affiliation and with reference to their special knowledge of industry, agriculture, labor, veterans' needs and interests, and other activities pertinent to the future welfare of Nebraska. The committee shall serve without compensation, but may be reimbursed for their actual and necessary traveling and other expenses incurred in carrying out the provisions of this act. The committee shall meet at the office of the Department of Industrial Development upon the written call of the chairman or any three members of the committee. The committee shall advise with the director in regard to the administration of the affairs of such department and outline the general policies to be followed by such department in carrying out the provisions of this act.

"Sec. 8. There is hereby appropriated out of the general fund of the State of Nebraska, not otherwise appropriated, the sum of one hundred thousand dollars for the biennium beginning July 1, 1945, and ending June 30, 1947.

"Sec. 9. On January 10, April 10, July 10 and October 10 of each year, the director shall file with the Clerk of the Legislature a detailed statement of all the expenditures of

funds under the provisions of this act during the three preceding calendar months."

The bill was approved April 16, 1945.

The bill received the votes of 22 members of the legislature, which was a bare majority, whereupon the presiding officer of the legislature declared that it had been constitutionally passed. It was then signed and transmitted to the Governor. The Governor signed it.

The plaintiff has alleged that the bill was not constitutionally adopted. He alleges, first, that it is an appropriation bill containing an appropriation of $100,000 not included in the Governor's budget message to the legislature and therefore under section 7, art. IV, of the Constitution could not be enacted without a three-fifths vote and, second, that the bill attempted to create a new executive office which attempt was ineffective for the reason that under section 27, art. IV, no new executive state office may be created except by a two-thirds majority of all members elected to the legislature.

He charges that the defendants expect to proceed to carry into effect the act.

The defendants by answer deny that the bill was unconstitutionally adopted and admit that they will, as officers of the state, put into effect its provisions. They join in the prayer for a declaratory judgment.

The pertinent portion of section 7, art. IV, of the Constitution, is the following: "The Governor * * * at the commencement of each regular session shall present, by message, a complete itemized budget of the financial requirements of all departments, institutions and agencies of the state for the ensuing biennium. * * * No appropriations shall be made in excess of the recommendation contained in such budget unless by three-fifths vote of each house of the Legislature, and such excess so approved by a three-fifths vote shall not be subject to veto by the Governor."

Section 27, art. IV, is the following: "No executive state office other than herein provided shall be created except by a two-thirds majority of all members elected to the senate and house of representatives respectively."

It will be noted that these two constitutional provisions carry reference to a senate and house of representatives. They were adopted while the state had a bicameral legislative system. Since that time under constitutional authority a unicameral system has been adopted and was in operation during the 58th regular session. By the terms of section 1, art. III, of the Constitution, the restrictions and limitations of section 7, art. IV, and section 27, art. IV, apply with the same force and effect to legislative proceedings under the unicameral system as they did to the bicameral. The portion of the section so declaring is the following: "All authority vested by the constitution or laws of the state in the Senate, House of Representatives, or joint session thereof, in so far as applicable, shall be and hereby is vested in said Legislature of one chamber. All provisions in the constitution and laws of the state relating to the Legislature, the Senate, the House of Representatives, joint sessions of the Senate and House of Representatives, Senator, or member of the House of Representatives, shall, in so far as said provisions are applicable, apply to and mean said Legislature of one chamber hereby created and the members thereof."

In this understanding we proceed to a consideration of plaintiff's first contention that the bill was not constitutionally adopted. In this consideration we are not aided greatly by precedent. On the attitude or approach to interpretation there is precedent. The opinion in *Elmen v. State Board of Equalization and Assessment*, 120 Neb. 141, 231 N. W. 772, which was a case wherein the court was called upon to interpret another phase of this same section 7, art. IV, laid down the following rules to be applied in constitutional interpretation:

"The words and terms of a constitutional provision, like those of a statute, are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense."

By quotation from 12 C. J., sec. 54, p. 707: "Courts may not supply what they deem unwise omissions, nor add words

which substantially add to or take from the constitution as framed."

By quotation from *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245, 147 N. W. 674: "The constitution as amended must be construed as a whole, * * * ."

By quotation from *Stoppert v. Nierle*, 45 Neb. 105, 63 N. W. 382: "Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning; a mere reading will suffice."

By quotation from *Hagenbuck v. Reed*, 3 Neb. 17: "No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; * * * ."

"We are indebted to the suffrage of the people for the adoption of all amendments submitted and indeed for the adoption of the original Constitution which such amendments changed. From this fact it is patent that, where the language employed is plain, the courts should accord to it the meaning which obviously would be accepted by the layman."

The plaintiff contends that the constitutional language employed is an inhibition against any appropriation for any department, institution or agency of the state in excess of the recommendations contained in the Governor's budget message unless the same is adopted by a three-fifths vote of the legislature. By the terms of this same provision the Governor was required to present his budget recommendations at the commencement of the session.

The defendants contend that the provision applies only to departments, institutions and agencies of the state in existence at the time it is required that the Governor shall make his budget recommendations.

It is apparent that the Department of Industrial Development was not in existence at the commencement of the 58th regular session of the legislature.

It cannot be said with certainty what was the intention of the framers of this provision in the respect in question but we are of the opinion that in the light of the rules stated that the position of defendants is the more reasonable. Of

course the Governor could not have, at the time his budget recommendations were required, made a recommendation of appropriation for the Department of Industrial Development and it does not seem reasonable that it was intended that the provision should be applicable to that which could not be anticipated but which was within the legislative prerogative.

From the beginning it has been a prerogative of the legislature at its sessions to create and provide by appropriation for agencies of state not state offices, and in 1920, at the same time when section 7, art. IV, was acted on by vote of the people a new prerogative, that of creating new state executive offices, was extended to the legislature by section 27, art. IV, of the Constitution.

Again it will be noted that the provision contains these words: "No appropriations shall be made in excess of the recommendation contained in such budget * * * ." The plural, "appropriations," is used. This would imply a limitation upon increase of amounts named in the budget and required to be therein and not to matters which could not be contemplated or anticipated. It would also imply an intention that the limitation was to attach to named subjects of appropriation and not to appropriations generally.

And again let it be assumed that the legislature passed a bill creating a new executive state office under section 27, art. IV, which carried an appropriation for the fulfillment of its purposes, by the required two-thirds vote. The bill was vetoed by the Governor. It failed thereafter of passage over the veto. Under such circumstances there would be no new office but under the reasoning of plaintiff there would be an appropriation which could not be gotten rid of except by repeal since it was adopted by more than a three-fifths vote and therefore was not subject to veto by the Governor. If plaintiff's interpretation is to be accepted the two constitutional provisions would be thrown out of harmony in violation of the rule that the Constitution as amended must be construed as a whole. It is unreasonable to assume either that any such disharmony was intended or that the framers

of the amendments were so lacking in foresight as to permit such an inadvertence.

We therefore conclude under the rules that constitutional provisions are to be interpreted and understood in their most natural and obvious meaning; that the Constitution as amended must be construed as a whole; that no sentence, clause or word should be rejected as meaningless, or superfluous, if it can be avoided; and that where the language is plain, the courts should accord to it the meaning which obviously would be accepted by the layman, that the passage of Legislative Bill 132 was not unconstitutional under section 7, art. IV, of the Constitution.

A determination of the second proposition depends upon whether or not the bill creates a new executive state office. It is conceded that in its passage it did not receive a two-thirds majority vote of all members elected to the Legislature.

It appears that the first question for determination is that of whether or not the term "executive state office" includes executive state department. For answer we look to section 26, art. V, of the Constitution of 1875, and its interpretations and application. Section 27, art. IV, of the present Constitution was substituted for this one in 1920.

Both provisions employ the term "executive state office." The earlier provision prohibited the creation of new executive state offices. The later permits their creation but imposes a restriction thereon. The term is used in the same sense in both.

In *Iams v. Mellor*, 93 Neb. 438, 140 N. W. 784, a stallion registration board was considered to be an office within the meaning of the term. In *State v. Cornell*, 60 Neb. 276, 83 N. W. 72, while the question was not directly passed upon, the court considered a food commission an office. In *State v. Porter*, 69 Neb. 203, 95 N. W. 769, a brand and mark committee was classed under the term office as used in these provisions.

Under the authority of these cases it becomes necessary to hold that the "Department of Industrial Development"

as named in the bill in question is an office within the meaning of section 27, art. IV, of the Constitution.

Is it then an executive state office? We are convinced that it is.

This court, in *In re Railroad Commissioners,* rendered an advisory opinion to the Legislature on the question of whether or not railway commissioners, or the office of railway commissioner, would be a state executive office. The opinion appears in the appendix to 15 Neb. Reports, page 679. While there is nothing official about the opinion the then three members of the court agreed in the following words, which words contain the reason for the conclusion, that railway commissioners would be state executive officers: "Hence their duties would be executive, and if state officers, if paid out of the state treasury, and their field of duty coextensive with the territorial limits of the state, they would be state executive officers." They further concluded that the creation of such an office would be violative of section 26, art. V, of the Constitution of 1875.

The legislature of 1899 by chapter 50, section 2, created a state brand and mark committee. The committee was to be composed of three members to be appointed by the Governor and the Secretary of State. Generally speaking the committee was to have charge of livestock brand registration.

In interpretation of the act with respect to section 26, art. V, of the Constitution of 1875, this court, in *State v. Porter, supra,* said: "The act of 1899 assumed to vest the brand and mark committee with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act were valid, be executive state officers. But as there can be no executive state offices other than those mentioned in section 1, article V of the constitution, the legislation we are considering was, of course, abortive and void."

By chapter 1, section 1, of the laws of 1911, the Legislature created the stallion registration board composed of the secretary of the Nebraska state board of agriculture, the professor of animal husbandry of the University of Nebras-

ka, and the deputy state veterinarian. Generally, its duties were supervision and registration of stallions in Nebraska.

This court, in *Iams v. Mellor, supra,* held that the act was violative of the constitutional inhibition against the creation of executive state offices. In so doing it approved the declaration of *In re Railroad Commissioners, supra,* and also, *State v. Porter, supra.* In a reference to *State v. Porter, supra,* it was said: "Paraphrasing the language of Judge Sullivan, the act of 1911 assumes to vest the stallion registration board with executive powers and jurisdiction throughout the state. This being so, the members of the committee would, if the act be valid, be executive state officers; but there can be no executive state officers other than those mentioned in section 1, art. V."

The defendants contend that the act in question creates a ministerial and not an executive state office. The decisions of this court recognize a classification of offices as ministerial (*State v. Loechner,* 65 Neb. 814, 91 N. W. 874), but we are convinced from an examination of the bill that the Department of Industrial Development does not fall within that classification.

In *State v. Loechner, supra,* the following appears: "Ministerial offices, it is said, are those which give the officer no power to judge of the matter to be done, and which require him to obey some superior. An executive officer, in the proper sense of the term, is one whose duties are mainly to cause the laws to be executed; such as the president, the governor of a state, or the chief executive officer of a city. It pertains to the execution and enforcement of the laws by one charged with that particular duty." In the same opinion, by quotation from *Flournoy v. City of Jeffersonville,* 17 Ind. 169, it is said: "A ministerial act may, perhaps, be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done." This latter conforms to the definition contained in Webster's New International Dictionary, 2d ed. (unabridged).

Examination of the bill discloses that there are six named and defined purposes and seven major named and defined powers and duties without anything the purport of which is to subject the department or any of its personnel to any type of control, supervision or direction in the accomplishment of its purposes or the performance of its powers and duties to any other department of the state or any official thereof. The only control outside the department is over the appointment of the director and the members of the "Nebraska Development Committee" provided for in the bill. The appointment of these is to be made by the Governor and their tenure of service is subject to his will.

The conclusion therefore is inescapable that the "Department of Industrial Development" as set up in Legislative Bill 132 of the 58th regular legislative session is a new executive state office within the meaning of section 27, art. IV of the Constitution.

It follows that since the bill did not receive a two-thirds majority vote of all members elected to that session of the Legislature it failed of constitutional adoption and never therefore became a valid law.

JUDGMENT FOR PLAINTIFF.

CARTER, J., participating on briefs.