THE STATE OF NEBRASKA, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, RELATOR, v. JACKSON B. CHASE, RESPONDENT.

25 N. W. 2d 1

FILED NOVEMBER 22, 1946. No. 32160.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,* for relator.

*Davis, Stubbs & Healey,* for respondent.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ., and POLLOCK, District Judge.

MESSMORE, J.

This is an original action which arises by the filing of an information in quo warranto for the purpose of having this court inquire into the matter and enter its judgment as to

whether or not the respondent, a member of the Nebraska Liquor Control Commission, was eligible by appointment of the Governor, to accept the office of district judge of the Fourth Judicial District of Nebraska.

The Liquor Control Commission, when plausible to do so, will hereinafter be referred to as the Commission.

The parties stipulated in substance as follows: That the respondent was appointed to the office of Nebraska Liquor Control Commissioner on May 25, 1941, for the statutory term of six years terminating May 25, 1947, and took the statutory oath of office as required by section 53-109, R. S. 1943; that the respondent filed a bond in the sum of $25,000, conditioned as required by section 53-109, R. S. 1943, which was approved by the required officials, and thereafter assumed and purported to act as a member of said Commission; that the appointment of the respondent was not submitted to the Legislature for confirmation nor confirmed by it; that the respondent, a Reserve officer in the United States Army, was called to active duty in March 1942, at which time he relinquished his duties on the Commission and another appointment was made pending his return from military service. He was released from military duty in June 1945, and resumed his place on the Commission again without confimation by the Legislature or the giving of a new bond, or taking a new oath. On July 1, 1946, respondent was appointed by the Governor to the office of district judge of the Fourth Judicial District of the State of Nebraska, in which office a vacancy then existed, and that he accepted and qualified and is now serving as district judge.

The information alleges that during the term for which he, the respondent, was a duly appointed, qualified, and acting Nebraska Liquor Control Commissioner he by virtue thereof was the head of a constitutionally established executive department and as such was ineligible to any other state office during the period for which he had been appointed.

The answer of the respondent denies specifically the foregoing allegation of the information. It affirmatively alleges that the Nebraska Liquor Control Commission is not mentioned as an executive department of the State of Nebraska as enumerated in the state Constitution; also alleges that the Nebraska Liquor Control Commission is an independent and quasi-judicial administrative commission set up by special act of the Legislature, and that the Legislature in its creation followed none of the constitutional requirements for the creation of a new executive department. It alleges also that the Legislature of the state has interpreted the constitutional provisions relating to the creation of "heads of executive departments" and by the passage of the act creating the Nebraska Liquor Control Commission did not create or intend to create an "executive department" having a "head" within the meaning of the Constitution. The answer further alleges that the statute creating the Commission was further interpreted by the chief executive of the state in office at the time of the passage of the bill, and by all chief executives thereafter, and the fact is that no names or appointments to the Commission were ever submitted to the Legislature for confirmation for eight years after the passage of the act, despite clear constitutional provisions requiring confirmation of heads of executive departments.

The respondent alleges that he is not, in any event, the "head of an executive department" mentioned in the Constitution, and was not required to, nor did he, give the bond required of the heads of executive offices under the Constitution, nor did he ever exercise executive authority as the head of an executive department.

Facts pleaded in the answer with reference to the foregoing allegations will appear in the opinion as occasion requires.

The two questions of importance presented by the relator are as follows:

(1) Is the division of state government known as the

Nebraska Liquor Control Commission, created by Laws 1935, ch. 116, p. 373, now ch. 53, sections 53-101 through and including section 53-1,118, R. S. 1943, an executive department of the state within the meaning of section 1, article IV, of the Constitution adopted in 1920 which insofar as applicable reads: "The executive officers of the state shall be the Governor, Lieutenant Governor, Secretary of the State, Auditor of Public Accounts, Treasurer, Attorney General, Superintendent of Public Instruction and the heads of such other executive departments as may be established by law. * * * "?

(2) Is a duly appointed, qualified, and acting Commissioner of the Nebraska Liquor Control Commission a head of an executive department of the state and therefore ineligible for appointment to any other state office during the term of office in which he is serving as such commissioner within the contemplation of that part of section 2, article IV, of the Constitution, insofar as applicable reading as follows: "None of the officers mentioned in this article shall be eligible to any other state office during the period for which they have been elected or appointed."?

The Nebraska Liquor Control Act was passed by the Legislature of 1935. Laws 1935, ch. 116, p. 373. While the act received two-thirds majority of the members elected to the Legislature, as is provided by section 27, article IV, of the Constitution as amended in 1920, to create an executive state office, such fact is not a criterion that the Legislature intended to, or purposed to, create a new executive department of government within the contemplation of section 1, article IV, of the Constitution. The Legislature might have voted unanimously for the act and still not have intended to create an executive department of government within the contemplation of the Constitution. It will therefore become necessary to analyze the act to determine the intention and purpose of the Legislature in passing it.

In approaching a determination of the two questions thus presented, it is well to remember that there are well

defined rules of law governing the interpretation of a constitution, the provisions thereof and the amendments thereto.

"The language of the Constitution is to be interpreted with reference to the established laws, usages and customs of the country at the time of its adoption, * * * ." In re Hammond, 83 Neb. 636, 120 N. W. 203, followed in State v. McMullen, 119 Neb. 739, 230 N. W. 677. The latter case cites with approval from Hinz v. Musselshell Co., 82 Mont. 502, "Our state Constitution must be construed in the light of the history of the commonwealth, the surrounding circumstances, the subject-matter under consideration, the object sought to be attained, as well as the system of laws which were in force in the territory at the time of its adoption."

"The constitution must be read in connection with the facts of history and the development of a representative form of government * * *." State v. Sheldon, 78 Neb. 552, 111 N. W. 372.

"The words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense.

"The Constitution as amended must be construed as a whole." Mekota v. State Board of Equalization & Assessment, 146 Neb. 370, 19 N. W. 2d 633.

"Legislative construction of a statutory or constitutional provision, although not conclusive upon the courts, when deliberately made, is entitled to great weight." Jackson v. Washington Co., 34 Neb. 680, 52 N. W. 169.

Bearing in mind the foregoing rules of law, we briefly review the historical background of the state with reference to the prohibition appearing in sections 1 and 2, article IV, of the Constitution.

Section 1, article V, of the Constitution of 1875, provided:

"The executive department shall consist of a Governor,.

Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction, Attorney General, and Commissioner of Public Lands and Buildings, * * *." It then provided for their terms of office and election, etc.

Section 2 provided in part: "None of the officers of the executive department shall be eligible to any other state office during the period for which they shall have been elected."

Section 26 provided: "No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created."

It will be noted that the executive department of the state government, as provided for in the Constitution of 1875, refers solely to the designated constitutional officers, and no others. The reason for the prohibition appearing in the Constitution of 1875 is not abundantly clear, and recourse to the proceedings of the 1875 Constitutional Convention cannot be had as they were, for the most part, destroyed by fire.

The prohibition as set forth in the Constitution of 1875 was not a matter of profound governmental policy or a matter on which the safety of the state depended, such as the Bill of Rights, or the basic division of governmental process, or any other of those vital provisions. The prohibition was unique, in that no other state saw fit to adopt it and forbid elective constitutional executive officers from aspiring to other executive state offices for which their qualifications might have fitted them. The prohibition as contained in the amendments to these sections of the Constitution made in 1920 is rather unique, as most states leave the way open for executive state officers who have gained experience in one state office to aspire to another state office. The prohibition as contained in the Constitution of 1875 therefore must have been inspired to cover purely a local situation. Nebraska was admitted to the Union in 1867, immediately

after the Civil War and at the beginning of the reconstruction and readjustment periods. Migration was towards the west. Men discharged from the military service, and others, were on the move to find homes and opportunity. The state was young. It offered great promise for those who were desirous of seeking political fortune to represent it in both national and state politics. This induced some officers of high military rank to come to Nebraska. However, it was believed at that time that it was more necessary to endeavor to perpetuate a stable state government. In keeping with this belief, the members of the Constitutional Convention of 1875 obviously realized that there would be more candidates for national office than state office, and that there would be insufficient national offices to accomodate the aspirants thereto and some, if they desired such, must aspire to state office. It was therefore necessary to provide that subordinate state officers should not be permitted to use such office as a stepping-stone to other state offices within the meaning of the prohibition during the term for which they were elected, and should not be permitted to embarass the chief executive or undercut him politically. On this theory the prohibition was written into the Constitution of 1875.

On April 19, 1919, the Legislature of Nebraska adopted the Civil Administrative Code, Laws 1919, ch. 190, p. 434, "An act to asopt (adopt) and establish a code of laws for the State of Nebraska relating to the civil government of the State and to provide for their administration and enforcement to be known as the Civil Administrative Code * * *."

Under Title I, "Executive Department," article I, it was provided: "Section 1. Civil Administration vested in governor.—The Civil administration of the laws of the state is hereby vested in the governor. For the purpose .of aiding the governor in the execution and administration of the laws, the executive and administrative work shall be divided into the several departments enumerated in Section

2 of this article.

"Sec. 2. Executive and administrative departments.—There are hereby created and established the following departments of State Government. The Department of Finance; The Department of Agriculture; The Department of Labor; The Department of Trade and Commerce; The Department of Public Welfare; The Department of Public Works.

"Sec. 3. Departmental Secretaries.—To aid the governor in carrying out the constitutional duties, vested in him as the supreme executive, each department shall have a departmental officer who shall be known as 'Secretary', who shall, subject to the provisions of this act, and under the general direction of the governor, execute the power and discharge the duties vested by law in his respective department."

The above act created executive departments and provided for departmental heads thereof, separate and distinct from the constitutional executive elective officers.

The same Legislature, by Laws 1919, ch. 196, p. 872, proposed "An Act to provide for the calling of a constitutional convention to revise, amend, or change the Constitution of the State of Nebraska and to declare an emergency." Thereafter the constitutional convention convened in 1920. The administrative code law had become the target of political antagonists, some believing that the act permitted the Governor to build a political machine and to exert too much control over the government of the state, and that there would be danger in the code executive officers gradually taking over the executive department. Those who supported the legislation were imbued with the efficiency that would result over and above the system that had been followed in this state, by placing the constitutional elective executive officers in charge of, and as the executive officers of, newly created state agencies or boards.

During the Constitutional Convention proceedings, with reference to the adoption of a new Constitution in 1920,

the question arose as to how executive offices and officers should be treated in such Constitution. The report of the vice-chairman of the committee on the executive department, Proceedings of the Nebraska Constitutional Convention, 1919-1920, Vol. II, pp. 1342, 1343, 1344, 1345, discloses that in considering the executive department of government in order to determine what the Convention ought to do with that department of government as far as provisions of the Constitution are concerned, it should first consider the provisions of the Constitution of 1875 and the difficulties encountered in the conduct of the executive department of government under those provisions. By section 26, article V, of the Constitution of 1875, there was an absolute limitation upon the power of the Legislature to create additional or other executive officers. This section provided: "No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created." That made the Constitution of 1875 very rigid as to the creation of other executive offices, and also it left upon the Legislature a limitation so that it could not provide for duties that the Constitution placed upon elective officers to be performed by other officers, after the adoption of this Constitution. Further in the report it is stated: "We soon found that there were many duties that had to be performed by the Executive Department of the Government that could not be performed by each of these executive officers separately, * * *." Then he explains that the Legislature went into the makeshift of creating boards to perform the functions of the executive department which were or could not be performed by the individual officers by reason of the constitutional limitations that were placed upon the power of the Legislature. This resulted in the inability of those having business before the separate boards to obtain hearings promptly, and the inability to efficiently transact business that would normally come under the several boards thus created.

The Civil Administrative Code Bill was an attempt to remedy some of the difficulties occurring in this respect. It did away with some of those boards and instituted six departments, and placed over those departments executive heads appointed by the Governor. So, for the first time in the legislative history of this state we had what is known as "heads of executive departments."

The phrase "heads of executive departments" could mean nothing more than the heads of the code departments of 1919, or as provided for in section 1, article IV, of the Constitution of 1920, "* * * such other executive departments as may be established by law." It is therefore clear that the language used in the code law, and the language used in the present Constitution refers to executive departments created, or to be created, within the limitations of the Constitution. It is obvious that this language does not foreclose the right or power of the Legislature to create boards or bureaus or departments that deal singly with independent legislation such as, in the instant case, the Nebraska Liquor Control Commission which we will hereafter speak of in more detail.

At the present time the language appearing in the Administrative Code Act is substantially the same as that which now appears in section 81-101, R. S. 1943, which section provides: "The civil administration of the laws of the state is vested in the Governor. For the purpose of aiding the Governor in the execution and administration of the laws, the executive and administrative work shall be divided into the following departments: (1) Department of Agriculture and Inspection, (2) Department of Labor, (3) Department of Health, (4) Department of Roads and Irrigation, (5) Department of Banking, and (6) Department of Insurance."

Also, the following statutory provisions have great force on the questions here being determined.

Section 81-102, R. S. 1943, provides: "The Governor shall appoint heads for the various departments, subject to con-

firmation by a majority vote of the members elected to the Legislature, which appointments shall be submitted to the Legislature within sixty calendar days following the first Thursday after the first Tuesday in each odd-numbered year. The officers shall be designated as follows: (1) The Director of the Department of Agriculture and Inspection for the Department of Agriculture and Inspection; (2) the Commissioner of Labor for the Department of Labor; (3) the Director of Health for the Department of Health; (4) the State Engineer for the Department of Roads and Irrigation; (5) the Director of Banking for the Department of Banking; and (6) the Director of Insurance for the Department of Insurance."

Section 81-103, R. S. 1943, vests the Governor with the authority to establish the salaries for all persons connected with the various departments, including the heads thereof.

Section 81-109, R. S. 1943, provides: "Each head of a department shall serve from his appointment and qualification until the first Thursday after the first Monday next succeeding the next election of the Governor, and until his successor is appointed and qualified, unless sooner removed by the Governor."

Section 81-110, R. S. 1943, provides: "Each head of a department, * * * shall, before entering upon the duties of his office, subscribe and take the constitutional oath of office, which shall be filed in the office of the Secretary of State."

Section 81-111, R. S. 1943, provides: "Each head of a department, * * * shall, before entering upon the discharge of the duties of his office, give bond, with security to be approved by the Governor, not less in any case than ten thousand dollars, conditioned for the faithful performance of his duties * * *."

Section 81-112, R. S. 1943, provides: "The head of each department is empowered to prescribe regulations, not inconsistent with law, * * *."

At the time the Constitution was adopted, and at the present time, there are in the statutes, as heretofore set

out, certain well-defined executive departments having a "head" and which represent in all respects exactly the same "heads of departments" that the Legislature of 1919, the Constitutional Convention of 1920, and every Legislature since has recognized.

We turn now to chapter 53, R. S. 1943, entitled "Liquors." We deem it unnecessary to set forth all the statutory provisions of the act. The following are sufficient to assist in determining the questions before us.

Section 53-105, R. S. 1943, provides: "There is hereby created the 'Nebraska Liquor Control Commission,' consisting of three members to be appointed by the Governor, no more than two of whom shall be members of the same political party, and no two shall be citizens of the same congressional district."

Section 53-106, R. S. 1943, provides in part: "Any appointee may be removed by the Governor, after an opportunity to be heard, for malfeasance, misfeasance or neglect in office."

Section 53-107, R. S. 1943, provides: "A majority of the commission shall constitute a quorum to transact business, but no vacancy shall impair the right of the remaining commissioners to exercise all of the powers of the commission; and every act of a majority of the members of the commission shall be deemed to be the act of the commission. The commission shall have a secretary, to be appointed by it subject to the approval of the Governor, * * *."

Section 53-109, R. S. 1943, provides: "Each commis_ sioner, and each person appointed by the commission, shall take and subscribe an oath that he will support and enforce the provisions of this act, * * *. Before entering upon the duties of his office, each commissioner shall give a bond with a corporate surety or with such surety as public employees may be required to give by law, such surety to be approved by the Governor, in the sum of twenty-five thousand dollars, * * *."

Section 53-112, R. S. 1943, provides in part: "Each mem-

ber of the commission shall receive an annual salary of four thousand dollars, payable monthly."

Section 53-114, R. S. 1943, provides in part: "The office of the commission shall be in Lincoln, but the commission may, with the approval of the Governor, establish and maintain branch offices at places other than the seat of government."

Section 53-116, R. S. 1943, provides: "The power to regulate all phases of the control of the manufacture, distribution, sale, and traffic in alcoholic liquors, except as specifically delegated in this act, is hereby vested exclusively in the commission."

Section 53-117, R. S. 1943, provides: "The commission shall have the following powers, functions and duties: (1) To receive applications for, and to issue and revoke licenses to manufacturers, distributors, non-beverage users, retailers, railroads, including owners and lessees of sleeping, dining and cafe cars, and boats, in accordance with the provisions of this act; (2) to fix by regulations the standards of manufacture of alcoholic liquors * * * to establish rules, not inconsistent with federal laws, for the proper labeling of containers or barrels, casks or other bulk containers or bottles of alcoholic liquor manufactured or sold in this state; it is intended by this grant of the power to adopt rules and regulations, that the commission shall be clothed with broad discretionary powers to govern the traffic in alcoholic liquors, and to enforce strictly all of the provisions of this act * * *; (3) to call upon other administrative departments of the state, county and municipal governments, county sheriffs, city police departments, village marshals, peace officers and upon prosecuting officers for such information and assistance as it may deem necessary in the performance of its duties; (4) to recommend to local governing bodies rules and regulations, not inconsistent with law, for the distribution and sale of alcoholic liquors throughout the state; (5) to submit to the Governor annually on or before December 15, reports of its official acts

and recommendations; (6) to inspect, or cause to be inspected, any premises where alcoholic liquors are manufactured, distributed or sold; (7) to hear and determine appeals from orders of a local governing body in accordance with the provisions of this act, as hereinafter set forth; (8) in the conduct of any hearing authorized to be held by the commission, to examine, or cause to be examined, under oath, any licensee, * * * the books and records of such licensee; to ,hear testimony and take proof material for its information in the discharge of its duties * * *; to administer * * * oaths; * * * to issue subpoena or subpoenas to require the attendance of witnesses and the production of books, which shall be effective in any part of this state; and any district or county court, or any judge thereof, either in term time or vacation, may by order duly entered, require the attendance of witnesses and the production of relevant books subpoenaed by the commission, and the court or judge may compel obedience to its or his order by proceedings for contempt; (9) to investigate the administration of laws in relation to alcoholic liquors in this and other states, and to recommend from time to time to the Governor and through him to the Legislature of this state, amendments to this act; and (10) to receive, account for and turn over to the State Treasurer state license fees and taxes provided for in this act."

Sections 53-1,115 and 53-1,116 R. S. 1943, authorize the commission to hold hearings on appeal from local governing bodies, and the decision of the commission on such hearings may not be appealed from.

In view of the foregoing statutory provisions governing the Nebraska Liquor Control Commission, it is well to ascertain the manner in which the liquor law compares in some respects with the constitutional requirements of executive departments.

The Nebraska Liquor Control Act provides that the appointment of a secretary to the Liquor Control Commission shall be subject to the approval of the Governor, and

the Commission may, with the advice and approval of the Governor, appoint or employ such inspectors, clerks, and other employees as may be necessary. §§ 53-107 and 53-108, R. S. 1943. The Constitution requires that the heads of the various executive or civil departments shall have power to appoint and remove all subordinate employees in their respective departments. Section 1, article IV, of the Constitution.

The Nebraska Liquor Control Act does not provide for, or require, confirmation of the members of the Liquor Control Commission. The Constitution requires that the heads of all executive departments established by law, other than those to be elected as provided therein, shall be appointed by the Governor, with the consent of a majority of all members elected to the Legislature. Section 1, article IV, of the Constitution.

The Liquor Control Act provides: "Before entering upon the duties of his office, each commissioner shall give a bond with a corporate surety or with such surety as public employees may be required to give by law, such surety to be approved by the Governor in the sum of twenty-five thousand dollars, for the faithful performance of the duties of his office, in such form as shall be prescribed by the Governor; * * *." § 53-109, R. S. 1943. The Constitution requires that "The officers mentioned in this article shall give bond in not less than double the amount of money that may come into their hands, and in no case less than the sum of fifty thousand dollars, with such provisions as to sureties and the approval thereof, and for the increase of the penalty of such bonds, as may be prescribed by law." Section 26, article IV, of the Constitution.

The Nebraska Liquor Control Act provides that "Each commissioner, * * * shall take and subscribe an oath that he will support and enforce the provisions of this act, such oath to be in the form prescribed by the Governor." § 53-109, R. S. 1943. The Constitution provides the exact form of oath to be taken by executive and judicial officers

and members of the Legislature. Section 1, article XV, of the Constitution.

The Nebraska Liquor Control Act provides in part: "The office of the commission shall be in Lincoln, but the commission may, with the approval of the Governor, establish and maintain branch offices at places other than the seat of government." There is no requirement of residence in Lincoln. § 53-114 R. S. 1943. The Constitution provides: "The records, books and papers of all executive officers shall be kept at the seat of government, and such officers, excepting the Lieutenant Governor, shall reside there during their respective terms of office." Section 1, article IV, of the Constitution.

The Nebraska Liquor Control Act provides in part: "Any appointee may be removed by the Governor, after an opportunity to be heard, for malfeasance, misfeasance or neglect in office." § 53-106, R. S. 1943. The Constitution, section 1, article IV, provides in part: "The heads of all executive departments * * * so appointed may be removed by the Governor."

While the Constitution, sections 1, 2, and 26 of article IV, makes certain requirements for qualification of constitutional officers and heads of departments, it is clear the Legislature paid not the slightest heed to any of such requirements when it created the Nebraska Liquor Control Commission.

Needless to say, the heads of executive departments as contemplated by the Constitution are subordinate officials of the Governor, as part of his official political family and subject to removal by him at any time for cause as set forth in section 12, article IV, of the Constitution. The Liquor Control Commission, on the other hand, is an independent agency, free from the Governor's domination, and a member thereof can only be removed by the Governor for cause, after an opportunity to be heard and for the reasons set forth in section 53-106, R. S. 1943. If the Legislature had intended to make the Liquor Control Commission an ex-

ecutive department within the purview of the Constitution, it certainly would have required that such commission meet the constitutional requirements as hereinbefore outlined.

At the time the Commission was created, the Governor appointed three original members of the Commission and the names of the members were not submitted to the Legislature for confirmation. At that time he did submit to the Legislature for confirmation members of the Board of Control, the State Normal Board, the Tax Commissioner, and members of the Fish and Game Commission. In 1937, the Governor made an appointment to the Nebraska Liquor Control Commission and there was no submission of this appointment for confirmation to the Legislature, although at that time he did submit all of the other officers where confirmation is clearly required. In 1939, the Governor was required to make an appointment to the Nebraska Liquor Control Commission. He did not submit the appointment for confirmation by the Legislature, but he did submit all of the other officers where confirmation was plainly required.

On May 25, 1941, the Governor appointed the respondent to the Commission. He did not request confirmation of the respondent's appointment. The respondent was not therefore confirmed, nor was confirmation of his appointment ever discussed. At the same session the Governor made the following appointments: Secretary of the Board of Educational Lands and Funds; Tax Commissioner; Director of the Department of Agriculture; member of the Board of Control; member of the State Board of Vocational Education; Directors of the Departments of Banking, of Health, of Labor; a State Engineer, and a State Sheriff. Here was the statement submitted with the appointments: "For the information and consideration of your honorable body, I am pleased to advise you that I have appointed—— —— as Director of ————.", signed by the Governor. Legislative Journal, 1941, pp. 84-86.

For eight years after the passage of the Liquor Control Act, no Governor submitted an appointment to the Senate

for confirmation. If they thought they were "heads of departments," their appointment would have been submitted to the Legislature for confirmation.

In 1942, the respondent took a leave of absence to enter the military service as an administrative officer in the United States Army. On January 11, 1943, the Governor, by a letter to the Legislature, dated January 8, 1943, informed that body that he had appointed a commissioner of the State Liquor Control Commission to serve during the period through which the respondent would be absent by virtue of his service in the United States Army, calling attention to section 32-1701, C. S. Supp., 1941, a statutory provision which preserved his office upon his return from military service under certain conditions. Legislative Journal, 1943, p. 81. At the same time he reappointed a member of the Commission, and did not request confirmation of the appointments.

It is apparent from the foregoing proceedings that the state executives, since the enactment of the Liquor Control Act, did not consider it in the same category as an executive department, and treated the appointments of the Commission as belonging to a separate and distinct entity from what might be termed a "head of an executive department."

The Legislature, over a long period of years, interpreted the Constitution as permitting the creation of boards, commissions, and agencies that are not executive departments within the constitutional definition. There are many of such agencies, for example, the former Nebraska Aeronautics Commission, Laws 1935, chapter 3, appearing as chapter 3, R. S. 1943; Game, Forestation and Parks Commission, Laws 1929, chapter 113, now chapter 81, article 8 (a), R. S. 1943; the Board of Examiners for Professional Engineers and Architects, Laws 1937, chapter 153, now chapter 81, article 8 (e), R. S. 1943; State Real Estate Commission, Laws 1943, chapter 171, now article 8 (g), R. S. 1943; and other boards and bureaus too numerous to mention. A careful analysis of the respective duties of

the boards or commissions hereinbefore designated, discloses that they have some executive duties to perform, but they deal primarily with special independent subjects removed from the category of executive departments as defined and recognized by law.

Every commission that exercises executive duties in some capacity cannot be narrowed to the definition of being an executive department under the Governor. The full purport of the act under consideration, the duties involved with the subject matter as distinguished from executive officers enumerated in the Constitution and under the statutes, makes it perfectly plain that the Legislature was not creating an executive department when it created the Nebraska Liquor Control Commission.

The distinction between executive departments of government and many other executive or independent agencies, though difficult of definition, is and has been recognized from the beginning by the federal government. The question has arisen on occasions in the federal government, and the Supreme Court of the United States has taken each case upon its merits, and determined the status of the department being considered by the court.

In the case of Burnap v. United States, 252 U. S. 512, 64 L. Ed. 692, 40 S. Ct. 374, it is said: "The term head of a Department means, in this connection, the Secretary in charge of a great division of the executive branch of the Government, like the State, Treasury, and War, who is a member of the Cabinet. It does not include heads of bureaus or lesser divisions."

The language is appropriate in the instant case in view of section 1, article IV, of the Constitution which designates the constitutional executive officers to be elected, and the statutes hereinbefore set out that designate other state executive officers appointed by the Governor and confirmed by the Legislature. One of the very important tests is that the department, if executive, has primarily to do with the political government of the state in the execution and

enforcement of the law wherein the Governor is the supreme executive head.

In Humphrey's Executor v. United States, 295 U. S. 602, 79 L. Ed. 611, 55 S. Ct. 869, in determining whether or not the President of the United States had the power and authority to discharge a member of the Federal Trade Commission, the Court said: "The Federal Trade Commission is an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, and to perform other specified duties as a legislative or as a judicial aid. Such a body cannot in any proper sense be characterized as an arm or an eye of the executive. Its duties are performed without executive leave and, in the contemplation of the statute, must be free from executive control."

It would be difficult to find more appropriate and applicable language relating to the situation in the instant case than that used by the Supreme Court of the United States in Humphrey's Executor v. United States, *supra.*

In analyzing the Nebraska Liquor Control Act, the construction of the act is confirmed by a consideration of the character of the Commission,—an independent, bi-partisan body of experts charged with duties that pertain to an independent subject. The officers of the Nebraska Liquor Control Commission carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed. Such a body cannot in any proper sense be characterized as an arm or an eye of the executive. Its duties are performed without executive leave and in the contemplation of the statute, and therefore are free from executive control. The Commission, from the very nature of its duties, must act with entire impartiality. It is charged with the enforcement of no policy except the policy of law. The Commission selects its own employees subject to the Governor's approval. The Governor has no power to discontinue their services, nor to

abolish the Commission. He is without power to transfer the members of the Commission from one department to another, and he has no business conferring with the Commission insofar as their duties and obligations are provided for by law, since the whole purpose of the Liquor Control Act is to take the subject of liquor out of partisan politics and relieve the Governor of the political pressure that would otherwise ordinarily be placed upon him. The Commission is bi-partisan, with staggered terms of office, each of six-year period, and the commissioners are from different congressional districts. The Commission virtually has no characteristics of the executive departments as they were described in the Civil Administrative Act of 1919, and as they are described and defined by statute and the Constitution at the present time.

The relator, in contending that the Liquor Control Commission is an executive department of the state, cites In re Railroad Commissioners, 15 Neb. 679, 50 N. W. 276, an advisory opinion in response to inquiries made by the Legislature. The court, in substance, indicated that section 26, article V, of the Constitution of 1875, prohibited the Legislature from creating an executive department, and that the Railroad Commission is an executive department. In this connection, section 20, article IV, of the present Constitution shows the creation of the State Railway Commission, providing for the election of the commissioners, length of term to be served by the commissioners, and the powers and duties of the commission. It is a constitutionally created body, as distinguished from an executive department or commission created by the Legislature. The cited case is not in point with the questions here being determined.

The relator cites the case of Mekota v. Board of Equalization and Assessment, 146 Neb. 370, 19 N. W. 2d 633, wherein the Legislature sought to create the Department of Industrial Development. The act was analyzed by this court and held to be an executive state office within the meaning of section 27, article IV, of the Constitution. The act, how-

ever, failed to get the required number of votes in the Legislature, as provided for by section 27, article IV, of the Constitution. The case has no bearing on the instant case.

The relator also cites State ex rel. Howard v. Marsh, 146 Neb. 750, 21 N. W. 2d 503, wherein this court held the Director of the Department of Agriculture and Inspection was an officer mentioned in article IV, of the Constitution and, as such, ineligible to be or become a candidate for Governor during the term of his appointment. He was declared to be the head of an executive department established by law, as mentioned in sections 1 and 2, article IV, of the Constitution. The court declared from an analysis of the entire act that such department constituted an executive department of the state.

We have heretofore pointed out the distinction between an executive department of the state such as the Department of Agriculture and Inspection, and the Liquor Control Commission. A member of the Liquor Control Commission cannot possibly be said to be the head of an executive department within the meaning of section 1, article IV, of the Constitution. The language simply has no applicability either in common understanding or historical background, to the kind of commission to which the respondent was a member.

For the reasons set forth in this opinion, we conclude and hold that the respondent is not ineligible nor prohibited by sections 1 and 2, article IV, of the Constitution, from accepting appointment to the office of district judge of the Fourth Judicial District of Nebraska.

JUDGMENT FOR THE RESPONDENT.